CENTRAL TRUST CO. OF NEW YORK v. EAST TENNESSEE, V. & G. RY. CO. (SIMMONS et al., Interveners).

(Circuit Court, N. D. Georgia. June 28, 1895.)

No. 507.

1. JURISDICTION OF FEDERAL COURTS—RAILROAD FORECLOSURES—ANCILLARY SUITS.

Proceedings were instituted in the circuit court for the Eastern district of Tennessee to foreclose a railroad mortgage, and a foreclosure decree was rendered which provided that the fund arising from the sale should, among other things, be applied to such claims "as are decreed by the court to be prior in lien or equity to the lien of said mortgage." Ancillary proceedings were had in the circuit court for the Northern district of Georgia, and that court rendered a decree ratifying and adopting the foreclosure decree rendered in Tennessee, but with a provision reserving to itself the right to "determine what amount of the purchase price of the property sold shall be paid into this court" for payment of costs, "and such other claims filed in this cause in this court as may be allowed, and adjudged prior in lien to the mortgage," etc. In a subsequent decree of the court in Georgia, confirming the sale, a provision was inserted which stated that the question of distribution of the funds, the priority of liens, payment of costs, etc., were reserved for future action "by this court." *Held,* that in view of these provisions the court in Georgia would assume jurisdiction to determine the question as to the priority of claims filed therein on judgments recovered in Georgia over the lien of the mortgage bonds, and would not remit such questions to the court in Tennessee. Central Trust Co. of New York v. East Tennessee, V. & G. Ry. Co., 30 Fed. 895, distinguished.

2. RAILROAD COMPANIES—BONDS AND MORTGAGES—TENNESSEE STATUTES.

The Tennessee statute of 1873, "to authorize certain railroad companies in Tennessee to issue consolidated or income bonds" and secure the same by mortgage, is a special statute, limited to a particular class of railroads and securities, and does not apply to mortgages executed by the East Tennessee, Virginia & Georgia Railroad Company, which was incorporated under the act of 1877 (Code, § 1271).

3. SAME.

The Tennessee statute of 1877 (Code, § 1271), providing that no railroad company shall have power to create any mortgage which shall be valid against judgments and decrees for timber furnished, work and labor done, or damages done to persons or property, is limited by its express terms to judgments obtained on causes of action arising within the state.

4. SAME.

Where a mortgage executed by a Tennessee railroad corporation, whose road extends into Georgia, is in course of foreclosure, and ancillary proceedings are had in the federal circuit court in Georgia, the question as to the priority of judgments filed in that court, and recovered in Georgia, on causes of action there arising, over the lien of the mortgage, must be determined by the laws of Georgia, and not by the laws of Tennessee.

5. SAME—PRIORITY OF LIENS—JUDGMENTS AND MORTGAGES.

Under the laws of Georgia, the lien of judgments recovered in that state, on causes of action arising therein, against a railroad company, is subordinate to the lien of a mortgage filed in the state prior to the time the causes of action arose.

**6. SAME—EQUITABLE ASSETS.**

The fact that a railroad extending into different states cannot be sold on execution at law, but can only be reached by proceedings in equity, does not render the proceeds of such a road, when sold by a court of equity under a decree of foreclosure, equitable assets, in the sense that such assets must be administered pari passu among creditors, irrespective of legal priority. On the contrary, the distribution must be according to the legal liens and priorities.

**7. SAME—PREFERENTIAL CLAIMS.**

In railroad foreclosure proceedings in the Fifth circuit, the court cannot give priority, over the mortgage, to a judgment for personal injuries, even if sustained less than six months before the appointment of receivers, unless the order of appointment contained some provision for the payment of prior claims. Cutting v. Railroad Co., 9 C. C. A. 401, 61 Fed. 150, followed.

In the matter of the exceptions of Charles W. Simmons and others to the report of the special master.

Reference was made to B. H. Hill, Esq., as special master in the above-stated cause, of certain questions to be determined by him, in view of the sale of the East Tennessee, Virginia & Georgia Railway, and settlement of its affairs, and distribution of the proceeds of sale. Among other matters for the consideration of the special master in this reference was that of the claim made by certain judgment creditors in this state of priority over the lien of the mortgage under which this road was sold. The claim of priority was by reason of certain statutes of the state of Tennessee, the home of this corporation. In addition to the bill filed in the circuit court for the Eastern district of Tennessee, a bill was also filed in the circuit court for this district, under which the property was held and managed in this state up to the time of the sale, in 1894. The master, in his report, disposes of the questions now before the court, and which have been heard on exceptions to the report, in this way:

Counsel representing the defendant corporation make verbally before me the question of jurisdiction. They contend that the original bill in this cause was filed in the United States circuit court for the Eastern district of Tennessee, and that this court is simply ancillary thereto, and that judgment creditors of the mortgager company who set up priority over the mortgage, and ask for an order for the payment of their claims out of the funds raised by the sale of the mortgaged property in the hands of the receivers, should apply to the court having original jurisdiction; that that court alone was the tribunal to decide such questions, and to order the payment out of the funds coming to the hands of the receivers. In support of this contention, they cite the case of Central Trust Co. of New York v. East Tennessee, V. & G. Ry. Co. (In re Intervening Petition of Miller) decided by this court, and reported in 30 Fed. 895. I do not assume to decide the question of jurisdiction, for that is a matter exclusively for the court. I deem it not inappropriate, however, in this connection, to refer to the judgments and orders of this court on the question of the distribution of the funds arising from the sale of the road in the hands of the receivers, in so far as they may throw light on the question of jurisdiction. In the original decree of foreclosure rendered in the main suit, at Knoxville, Tennessee, it is ordered as follows: "The purchaser or purchasers at said sale shall, as part of the consideration for such sale, take the property purchased upon the express condition that he or they, or his or their assignees approved by the court, will notwithstanding, pay off and satisfy any and all outstanding and unpaid receivers' certificates, or receivers' notes or obligations issued under the orders of this court, and having priority over the lien of said mortgages, and all other claims filed in this cause, or in either of the causes consolidated herein, but

only when said court shall allow such claims, and adjudge the same to be prior in lien to the mortgages foreclosed in this suit, or either of them, and in accordance with the order or orders of the court allowing such claims and adjudging respect thereto." See original decree of foreclosure and sale rendered on the 4th day of April, 1894, United States circuit court, Eastern district of Tennessee (page 26, par. 101). "Also, the purchaser or purchasers at said sale shall also, as part of the consideration, in addition to the payment of the sum or sums bid, take the property purchased upon the express condition that he or they, or his or their assignees, approved by the court, will pay off and satisfy all debts or obligations incurred or to be incurred by the receivers having possession of such property, which have not been or shall not be paid by said receivers, or out of the proceeds of the sale or sales herein ordered, or otherwise, and which shall be adjudged by the court to be debts or obligations properly chargeable against the property purchased, and to be prior or superior to the lien of said mortgages, or either of them." Id. p. 26, par. 104. "Also, the fund or funds arising from the sale or sales shall be applied as follows: * * * (2) To the payment of all such claims as are decreed by the court to be prior in lien or equity to the lien of said mortgages, or either of them." Id. p. 27, par. 108. In the decree of April 9, 1894, of this court, ratifying and adopting the decree of foreclosure rendered in the main suit, it was, among other things, decreed as follows: "This court, however, reserves the right, upon the coming in of the report of the special master of the sale hereinbefore ordered, to fix and determine what amount of the purchase price of the property sold shall be paid into this court for the payment of the costs of this cause in this court, and such other claims filed in this cause in this court as may be allowed, and adjudged prior in lien to the mortgages foreclosed in this suit." This order was passed by Judge Pardee, and, by its terms, provides for the payment of money into this court arising from the sale of the mortgaged property for the purpose of paying the costs accruing in the ancillary cause, and also for the purpose of paying such claims as may be filed in this court, as interventions in this cause, that may be allowed, and adjudged prior in lien to the mortgages foreclosed in this suit. In the order of Judge Newman confirming the sale on the coming in of the report of the special commissioner, the following language is used: "The questions of distribution of the fund arising from the sale, priority of liens, payment of costs, etc., are not disposed of by this order, but all such and similar questions are hereby reserved for future action by this court." From these recitals, it clearly appears that this court, in confirming the decree of sale and foreclosure rendered in the main suit, reserved to itself the right to pass upon questions of priority which might arise in cases filed within its jurisdiction, and to grant orders for payment of any claims that it held prior in lien to the mortgage, out of the funds arising from the sale of the mortgaged property. In view of these judgments of this court, and the order of the court appointing the special master, with directions that all claims which are alleged to be superior to the lien of the mortgages under which said road was sold should be referred for the purpose of hearing and deciding that question, to wit, the question of priority, I deem it my duty to consider the matters covered by the order of reference, leaving the question of jurisdiction to be settled by the court, if it should be insisted upon.

The East Tennessee, Virginia & Georgia Railway Company is a corporation organized under the provisions of an act of Tennessee passed March 12, 1877, by the purchasers of the East Tennessee, Virginia & Georgia Railroad Company, which had been sold under mortgage. See articles of incorporation (Pamph. pp. 26, 27). The act of March 12, 1877, above referred to, is entitled "An act as to the sale of railroads under mortgage; granting certain powers to purchasers and authorizing incorporation of the purchasers." See pages 22–25 of the certified pamphlet. On the 1st of September, 1888, the East Tennessee, Virginia & Georgia Railway Company issued its bonds, or provided for their issuance of that date, in the sum of six million dollars, and secured their payment by a mortgage of that date upon certain properties described in said mortgage. The bonds issued and secured by this mortgage are known and designated as "Equipment and Improvement Bonds." See copy of mortgage of September 1, 1888, herewith filed. Subsequently said

railway company duly issued fifteen million dollars more bonds, for the purpose of retiring what are described as the "First Extension Bonds" of said company, and to provide means for the purpose of building branches, extensions, double-tracking the main line, and providing additional equipment; and those bonds are known as the "General Mortgage Five per Cent. Bonds," and their payment is secured by mortgage bearing even date, upon all the properties of said railway company. See copy of mortgage, December 1, 1890, herewith filed. The record in this cause, filed in this court, shows that default was made in the payment of interest on these bonds, and the foreclosure suit was instituted originally in the United States circuit court for the Eastern division of Tennessee, at Knoxville. Ancillary proceedings were had in the United States circuit courts of Georgia and Alabama. Previous to the foreclosure proceedings, a suit had been filed by Samuel Thomas and others in the same courts, and on June 25, 1892, the receivers were appointed. The causes were consolidated by order of the court, and all further proceedings were had under the consolidated causes.

Petitioners holding the judgments against the East Tennessee, Virginia & Georgia Railway Company for causes of action accruing prior to the receivership, and subsequent to the execution and registration of the mortgages, claim that they are entitled to priority over said mortgages, because of the statute law of the state of Tennessee. No attack is made upon the validity of said mortgages, or the record thereof, but they claim that they are entitled to be paid out of the funds arising from the sale of the mortgaged property, prior to the bonds secured by the mortgage, because of the act of 1873 of the state of Tennessee. This is an act entitled "An act to authorize certain railroad companies in Tennessee to issue consolidated or income bonds and to mortgage their property to secure the same for the purpose of paying off their indebtedness." The first section provides that any of the railroad companies of this state which has heretofore leased its road, roadbed, and rolling stock to any other person or corporation for a term of years, and which is indebted to this state by reason of bonds loaned or indorsed or otherwise, and to other individuals or creditors by reason of the mortgage bonds of such railroad company being owned or held by such individuals or corporations, be and they are hereby authorized and empowered to issue bonds to be known as "Consolidated Mortgage Gold Bonds," in denominations of one thousand dollars each, and bearing seven per cent. per annum gold interest, payable semiannually, in order to enable such railroad companies to raise money for the purpose of paying off such indebtedness to the state and individuals and corporations, and also for the purpose of discharging any other indebtedness or liability which said railroad companies may incur or have incurred in the exercise of their lawful pursuits or objects. Section 2 provides that in order to secure the payment of said consolidated bonds and the interest thereon, as it falls due, the railroad companies be, and they are hereby, authorized and empowered to execute mortgages, deeds of trust, etc. Section 3 provides that any railroad company in this state owing outstanding floating debts, and being desirous of making provision for the payment of the same, be, and they are hereby, authorized and empowered to issue bonds, to be known as "Income Bonds," for an amount fully sufficient to cover and pay off the aforesaid indebtedness specified in this section of this act, which said income bonds may bear a rate of interest not exceeding ten per cent. per annum, which interest may be made payable either annually or semiannually; and the railroad company may negotiate and sell said income bonds for the aforesaid purpose, and, in order to secure the payment of the principal and interest of said income bonds, may mortgage or convey, by deed of trust, either the whole or any part of the rents and profits, and the other property and franchises of said railroad company. Section 4 provides the number of bonds that the company availing itself of the benefit of this act shall issue of consolidated or income bonds per mile. In section 5 of said act there is a proviso that no such mortgage shall bar any judgment against such roads for work or labor done, or damages done to person or property. Acts Tenn. 1873, p 8. Under this last proviso, the interveners claim that their judgment, being against the railroad company for damages to person or property, should be paid in preference to the bonds secured by the mortgages foreclosed in this

court. I do not think that this position is supported by a consideration of the language of the act. I think this act of 1873 is very clearly a special act, applying only to the class of railroads particularly specified by said act, and to the certain classes of bonds authorized by said act to be issued by such railroads, of a certain character and for certain purposes. The act does not provide for any general authorization for the issuing of bonds and execution of mortgages by a railroad company. The caption of the act is express: "An act to authorize certain railroad companies in this state to issue consolidated or income bonds and to mortgage their property to secure the same for the purpose of paying their indebtedness." The first section only authorizes the issuance of bonds by any railroad company which has heretofore leased its roadbed and rolling stock to any person or corporation for a term of years. It restricts the character of bonds to the class known as "Consolidated Gold Mortgage Bonds," bearing seven per cent. interest, and the second section of said act authorizes the execution of mortgages to secure the payment of the consolidated bonds provided for and described in the first section. The third section of the act authorizes the issuance of "income bonds," to bear a rate of interest not to exceed ten per cent., for the purpose of paying the floating debts, and the execution of mortgages to secure the same. The fourth section limits the aggregate amount of consolidated and income bonds to two thousand dollars per mile of road mortgaged, and the fifth section contains a proviso that the character of mortgages issued under the provisions of this act, and for the specific purposes and by the character of railroads described by said act, to secure the special kind of debts specified by the terms of said act, shall not bar any judgment against such roads specified in the act for work or labor done, or damages done to persons or property. Construing the provisions of the act itself, with the title thereof, it is very clear to my mind that this act does not apply either to the East Tennessee, Virginia & Georgia Railway Company, or to the bonds secured by the mortgages foreclosed in the case of the Central Trust Company of New York against said railway company. It is clear to my mind, from a consideration of this act, that the bonds issued by the East Tennessee, Virginia & Georgia Railway Company, and the mortgages executed by it are not embraced within the terms of this act of 1873, and were not issued and executed under the authority thereof. This position is borne out, not only by a consideration of the act itself, but by a consideration of other statutes of the state of Tennessee authorizing the issuance of bonds and the execution of mortgages by railroad companies in said state, and that it is a special act, confined to the class of securities and character of railroads therein mentioned, and is regarded as limited in its application. The learned counsel for the defendant calls attention to the fact that in the compilation of statutes made by Milliken & Vertrees, pursuant to legislative action, in 1884, the act of 1873 was not embodied in that compilation, while all statutes of a general character relating to the issuance of bonds and mortgages by the railroads are included in that compilation. The East Tennessee, Virginia & Georgia Railway Company is not one of the class of roads designated in the act of 1873, and the bonds issued by said railway company are not within the two classes of bonds authorized and provided for in said act. That is to say, they are neither consolidated nor income bonds. See description of said bonds in deeds of trust of file in this court. As above stated, the East Tennessee, Virginia & Georgia Railway Company was incorporated under the act of 1877. This act of 1877 is section 1271 of the Code of Tennessee (Ed. 1884). The act of 1877 also contains a provision, in favor of operating expenses, and damages for personal injuries and injuries to property, somewhat similar to the proviso in the act of 1873. The proviso in the act of 1877 (Code Tenn. § 1271) is in the following language: "No railroad company shall have power to give or create any mortgage or other kind of lien on its railway property in this state which shall be valid and binding against judgments and decrees and executions therefrom or timbers furnished and work and labor done, or for damages done to person and property in the operation of its railroad in this state." It will be seen, however, that this proviso expressly limits the superiority of such claims over the lien of the mortgage to the property "in this state," and to judgments or decrees and executions therefrom, or timbers furnished

or work or labor done on its road, or for damage done to person and property in the operation of its road, "in this state." In other words, the very terms of the act exclude any extraterritorial force or effect, and, in order to come within the provisions of the act, such claims must be based upon judgments or decrees issued from the courts of Tennessee for damage done to person or property in the operation of the railroad in the state of Tennessee, and such claims constitute a lien only upon the property of the defendant railroad located in the state of Tennessee. Indeed, it is conceded by counsel who represent interveners in these cases that they do not come within the proviso of the act of 1877, but they claim that the act of 1877 did not repeal the act of 1873, and that said latter act is still of force, and under its terms they are entitled to priority of payment over the bonds secured by the mortgages. It is true that the act of 1877 did not repeal the act of 1873. The two acts are entirely consistent. But this question is not material to be considered, because, as above stated, in my opinion the act of 1873 has no application whatever to classes of bonds and execution of mortgages issued by the East Tennessee, Virginia & Georgia Railway Company.

Even if I am incorrect in this proposition, and this act of 1873 does apply to the class of securities issued by the East Tennessee, Virginia & Georgia Railway Company, and secured by mortgages foreclosed in this court, yet I am of the opinion that the proviso of the act of 1873 in reference to priorities and liens of judgments therein mentioned has no extraterritorial force or effect, and does not apply to causes of action accruing in the state of Georgia, or to judgments for damages to person or property rendered by the courts of this state. This view, I think, is entirely consistent with the law that all contracts are made with reference to the laws of the state in which the subject-matter of the contract is, and that all laws of a general character enter into, and become a part of, contracts executed within said state. In the determination of priorities or liens, the lex fori, and not the lex loci contractus, controls. The judgments in behalf of these interveners against the railway company being rendered by courts in the state of Georgia, their priorities or liens are determined and fixed by the laws of the state of Georgia, and not by the laws of Tennessee; and as the mortgages executed by said East Tennessee, Virginia & Georgia Railway Company to secure the bonds issued by said railway company were duly recorded in the state of Georgia before either the cause of action accrued or the judgments were rendered, by the laws of the state of Georgia they take precedence over such judgments. The laws of no state have any extraterritorial existence, save by comity, and laws which affect titles or liens upon property are controlled by the state where the property is located, and where the liens are declared. Walworth v. Harris, 129 U. S. 364, 9 Sup. Ct. 340; Green v. Van Buskirk, 5 Wall. 307; Story, Confl. Laws, § 390; Insurance Co. v. Hanford, 143 U. S. 187, 12 Sup. Ct. 437; 3 Am. & Eng. Enc. Law, p. 508, par. 3, and note to paragraph; Morgan v. Neville, 74 Pa. St. 52.

Counsel for interveners insist that the fund in the hands of the court arising from the sale of the mortgaged property under the foreclosure proceedings in this cause constitutes equitable assets, and ought to be administered as such. They claim that as a railroad cannot be levied on by common-law process, but must be sold and debts paid by means of proceedings usual in a court of equity, that the distribution of the fund arising from such sale should be controlled according to justice and right in the particular case; the general rule being that equality is equity. It is true that railroads extending into a different state cannot be levied on and sold under any common-law process, but creditors are compelled to resort to a court of equity to secure the sale of a railroad, its properties and franchises; but where a mortgage executed by a railroad company on its properties extending into different states, is foreclosed by proceedings in equity, and sold under decree of foreclosure, the fund arising from such sale is not equitable assets, in the sense that such assets must be administered by a court of equity pari passu among the creditors of the mortgagor, irrespective of legal priority, but such fund should be distributed according to legal liens and priorities. It is admitted in this case that the mortgages, as executed by the said railway

company to the Central Trust Company of New York to secure its bonds, were duly executed and recorded, and constitute a valid, subsisting lien—first lien—on all the property therein described; and to say that, because such a mortgage is foreclosed in equity, that the lien of the mortgages is divested, and the fund arising from the sale of the mortgaged property distributed to other creditors of the mortgagor, is unsupported by any principle of law, justice, or equity, and is not sustained by any decision cited by counsel. The lien of the mortgages in this case cannot be displaced or divested, except by a limited class of what is known as "preferential claims," placed upon the property by the court appointing the receivers.

The judgments held by the interveners in all of the cases are for injuries to persons or property; rendered after the execution and record of the mortgages, and upon causes of action arising subsequent to such execution and record. It is contended in only one of the cases that such judgment comes with the operation of what is known as the "six-months rule." This is the judgment in favor of C. W. Simmons for personal injuries received while an employé of the railway company, which judgment was rendered by this court on the 31st day of August, 1894; the cause of action arising on the 11th day of February, 1892, less than six months before the appointment of the receivers in this case. I do not think that, the cause of action arising within the six months, that fact alone makes it a preferential claim. I do not think that there is any fixed rule, adopted by the federal court, barring claims contracted more than six months before the appointment of the receiver, nor giving claims a preferential character, contracted less than six months before such appointment. The question is one of superior equity in each case. The supreme court of the United States, in one case, gives such priority to materials furnished three years before the appointment of a receiver, and a great many debts were denied this priority which were contracted a few weeks or days before the appointment of a receiver. But counsel for Simmons insist that his judgment comes within the spirit of the rule adopted by the federal courts in reference to preferential claims, and the facts of the case, in my opinion, do make a strong case for the application of the rule, and the payment of his judgment in preference to the mortgages. He was a brakeman in the employment of the railway company. A collision between a freight train and a passenger train of such company was imminent, and, but for the prompt and heroic action of the employé, the collision would inevitably have occurred. Great destruction, in all probability, would have been had, not only to the property covered by the mortgage, but there would doubtless have been many claims for damages for personal injuries. This employé received his injuries at the command of the conductor of the railway company, and in his successful effort to save the property and passengers of the railway company. His labor and work at the time he received his injuries aided in the preservation of the property covered by the mortgages, and occurred within a reasonable time before the appointment of receivers. It seems, therefore, that this claim certainly stands upon the same footing of reason, justice, and equity as a claim for labor done or supplies and materials furnished to keep the railway a going concern just prior to the appointment of the receivers; and I would hold and find in favor of this claim of the intervener, Simmons, as a preferential debt, which should be paid out of the funds arising from the sale of the mortgaged property now in the hands of the receivers of this court for distribution, on the authority of the numerous cases decided by the courts of the United States, beginning with the case of Fosdick v. Schall, 99 U. S. 235, and especially under authority of the decision of the circuit court of Kansas, made by Judge Caldwell, in the case of Farmers' Loan & Trust Co. v. Kansas City, W. & N. W. R. Co., cited in 53 Fed. 183; but in view of the decision of the circuit court of appeals, reported in 9 C. C. A. 401, 61 Fed. 150 (Cutting v. Railroad Co.), for this judicial circuit (decision rendered by Judge Pardee), I do not think I have a right to so report. It is contended that when the receivers were appointed no provision was made for the payment of such claims, either from the current earnings of the property or from the corpus thereof; and, under this decision of the circuit court of appeals, it is held: "Upon the sale

of a railroad on foreclosure, it is error to direct payment of claims for supplies furnished prior to the receivership out of the purchase money, where no provision was made for such payment when the receiver was appointed." This decision is in conflict with several others on the same subject in the federal courts,—notably, in the case of Blair v. Railroad Co., 22 Fed. 471, and in the case of Farmers' Loan & Trust Co. v. Kansas City, W. & N. W. R. Co., supra; also Central Trust Co. v. St. Louis, A. & T. Ry. Co., 41 Fed. 551. But I think this decision is binding upon the courts of this circuit. None of the other interveners contend that their judgments come within the principle of preferential claims, but concede the contrary.

Counsel for interveners further insist that their judgments should be paid by the purchaser of the road, or out of the fund in court, under the terms of the decree and the order granted by Judge Newman when the sale was confirmed. This would be true, if these judgments or claims were prior in lien to that of the mortgages, and which should be adjudged by the court to be prior in lien to the mortgages; but, as I have held that none of these judgments or claims are entitled to such priority, therefore none of them fall within the terms of the decree and order above mentioned.

Upon a consideration of the whole case, I conclude as follows: (1) That the mortgages executed by the East Tennessee, Virginia & Georgia Railway Company to the Central Trust Company of New York, dated September 1, 1888, and December 1, 1890, to secure its bonds, constitute a first lien on the properties of the mortgagor described therein. (2) That the interveners herein first above mentioned have valid judgments against the defendant, the East Tennessee, Virginia & Georgia Railway Company; that all of said judgments were rendered subsequent to the execution and record of the mortgages to the Central Trust Company of New York, and were based upon causes of action arising subsequent to such execution and record. (3) That none of said judgments so held by said interveners have any right or priority over said mortgages, and are not entitled to be paid out of the fund in the hands of this court, arising from the sale of the mortgaged premises, in preference to the bondholders secured by said mortgages. (4) That the act of the state of Tennessee, of 1873, has no application to the mortgages executed by the East Tennessee, Virginia & Georgia Railway Company to the Central Trust Company of New York, but that said act has a restrictive and limited application to the class of securities and the character of railroad specified in said act. (5) That, even if said act of 1873 did apply to said mortgages, it has no extraterritorial force or effect, and that all of these judgments held by the interveners, having been rendered by courts in the state of Georgia, the causes of action arising in said state, must be controlled, on the question of priority, by the laws of the state of Georgia. (6) That the judgments in behalf of the interveners, being for injuries to person or property, are not entitled to any priority over the mortgages, either in law or equity, as preferential debts, but these interveners are simply general creditors of the railway corporation, and, as such, cannot be paid out of the funds in the hands of the court, arising from the sale of the mortgaged property. I therefore find and report against the claim of priority set up by the interveners, and in favor of the paramount lien of the mortgages executed by the East Tennessee, Virginia & Georgia Railway Company to the Central Trust Company of New York, above noted.

The evidence, being documentary in its character, is herewith filed, with the minutes of the proceedings had before me. All of which is respectfully submitted.

This March 29th, 1895.                    Benj. H. Hill, Special Master.

Butler, Stillman & Hubbard and Lucky & Sandford, for complainant.

Dorsey, Brewster & Howell, for defendant.

Mynatt & Wilcoxon, for interveners.

NEWMAN, District Judge. As to the contention that this court has no jurisdiction to hear and determine the questions raised as

to the priority of liens of Georgia judgment creditors over the bonds secured by the mortgage, this may be said first: The decision made by Judge Pardee, in which I concurred, in Re Intervening Petition of Miller, 30 Fed. 895, was made in a case somewhat different from this, as to the manner in which two bills for foreclosure and for receiver were originally brought. The bill in this case is more in the nature of an original bill, although the primary litigation has been in Tennessee. It is doubtful if it can be considered ancillary only, as the proceeding here clearly was in the former case. But, be this as it may, the extract from the decree of foreclosure of April 4, 1894, and of the decree of April 9, 1894, and from the order passed here confirming the sale, as shown in the foregoing report, clearly distinguish the question, as now presented from that passed on by Judge Pardee and myself in the Miller Case, supra. Under the practice which has grown up in this receivership case of the East Tennessee Railway, and similar cases, of late years, it is doubtful if the rule announced in the Miller Case can be adhered to, and a proper and satisfactory disposition made of the numerous intervening petitions which come into these cases, raising questions similar to the one now presented. The rights of parties under the local law may be better ascertained in their respective jurisdictions than they would be if sent, as a whole, to the court of primary jurisdiction. I would not undertake to question the correctness of the rule in the Miller Case, without concurrence of the circuit judge who delivered the opinion; but, in my judgment, it is not applicable here, in view of the direction which has been given this case, and of the orders and reservations contained in the record.

As to the exceptions of interveners who claim priority over the mortgage as to the fund arising from this sale, by virtue of certain statutes of the state of Tennessee, the very able report of the special master is so full, clear, and so entirely satisfactory, that nothing need be said on that question. I have no doubt as to the correctness of the conclusion arrived at by the special master, and set out in his report. Further discussion of the matter is unnecessary, and the exception will be overruled, and the report of the special master confirmed.