## FIDELITY TRUST CO. v. GASKELL.

### (Circuit Court of Appeals, Eighth Circuit.    April 6, 1912.)

### No. 3,572.

#### (Syllabus by the Court.)

**1. BANKRUPTCY (§ 451*)—COURTS (§ 405*)—CIRCUIT COURT OF APPEALS—APPELLATE JURISDICTION.**

The Circuit Court of Appeals has jurisdiction to review the decision of a District Court exercising ancillary jurisdiction in bankruptcy that it has no jurisdiction to determine whether the proceeds of goods it seizes and sells as the property of the bankrupt are the property of the bankrupt estate or the property of adverse claimants.

It is only when the jurisdiction of the trial court as a federal court is in issue that the Supreme Court has exclusive jurisdiction to entertain a writ of error or an appeal under the first clause of section 5 of the Act of March 3, 1891, c. 517, 26 Stat. 826, 827 (U. S. Comp. St. 1901, p. 549), creating the Circuit Courts of Appeals.

Whenever its jurisdiction is conditioned, not by its power as a court of the United States, but (1) by its general authority as a judicial tribunal, (2) by the general principles of jurisprudence and the established rules of practice regarding the disposition of the claims of interveners and other parties in equity and ancillary proceedings, or (3) by the principles and rules which govern the proceedings of courts of concurrent jurisdiction between themselves, its decision is reviewable by the Circuit Courts of Appeals.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 451;* Courts, Cent. Dig. §§ 1097–1099; Dec. Dig. § 405.*

Jurisdiction of Circuit Courts of Appeals in general, see notes to Law Ow Bew v. United States, 1 C. C. A. 6; United States Freehold Land & Emigration Co. v. Gallegos, 32 C. C. A. 475.]

**2. BANKRUPTCY (§ 116*)—FEDERAL COURTS—ANCILLARY JURISDICTION.**

District Courts exercising ancillary jurisdiction in bankruptcy are vested with the power and charged with the duty to hear and adjudge the adverse claims of parties who pray their determination of such claims to the title to, or to legal or equitable liens upon, the specific property they seize as the property of the bankrupt, and, according to their adjudications, to send the property, or its proceeds, to the court of primary jurisdiction, or to apply them to the satisfaction of such claims.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 116.*]

**3. BANKRUPTCY (§ 18½,* New, vol. 8, Key No. Series)—CLAIMS OF THIRD PERSONS.**

The petitioners in bankruptcy and officers appointed in the District Court of the Western District of New York invoked the ancillary jurisdiction of the District Court of the Western District of Missouri. That court appointed a receiver, seized and sold a stock of goods as the property of the bankrupts when the creditor, a corporation, of another "person," a partnership, intervened, alleged that the property seized was the only property of that partnership which was, and had been for years, indebted to it in the sum of $15,000, and prayed that the proceeds of this property which was seized in Kansas City be applied to the payment of its claim and to the payment of the claims of other creditors of that partnership similarly situated.

*Held,* the District Court of the Western District of Missouri had the jurisdiction, and it was its duty, to hear and adjudge this claim and to dispose of the proceeds of the property it seized within its territorial limits according to its adjudication thereof.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

*(Additional Syllabus by Editorial Staff.)*

**4. BANKRUPTCY (§ 69*)—STATUTORY PROVISIONS—PERSONS SUBJECT.**

Under Bankr. Act July 1, 1898, c. 541, 30 Stat. 544 (U. S. Comp. St. 1901, p. 3418), a partnership is a distinct entity separate from the partners who compose it and from other partnerships composed in part of the same members.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 51–53, 56; Dec. Dig. § 69.*]

Appeal from the District Court of the United States for the Western District of Missouri.

Bankruptcy proceedings against Michael C. Simon, individually and as surviving partner. Petition in intervention by the Fidelity Trust Company against Lon H. Gaskell, ancillary receiver. From a judgment for the receiver, the intervener appeals. Reversed and remanded, with instructions.

Justin D. Bowersock (Frank Hagerman and Lister M. Hall, on the brief), for appellant.

John M. Cleary and C. W. McKay, for appellee.

Before SANBORN and SMITH, Circuit Judges, and WILLIAM H. MUNGER, District Judge.

SANBORN, Circuit Judge. Has a United States District Court, which in the exercise of its ancillary jurisdiction has seized and converted into money the property of a third "person," a partnership, as the property of a "person," another partnership, against which proceedings in bankruptcy have been commenced in the court of original jurisdiction, the jurisdiction to restore the proceeds of the property which are still in its possession to a creditor of the true owner, the partnership, against which no proceedings in bankruptcy have been commenced, which is equitably entitled to them? This is the chief question which this appeal presents.

[4] Under Bankr. Act July 1, 1898, c. 541, 30 Stat. 544 (U. S. Comp. St. 1901, p. 3418), a partnership is a distinct entity, a person, separate from the partners who compose it and from all other partnerships. It owns its property apart from the individual property of its members and apart from the property of every other partnership of which any of its members happen to be members, and it owes its debts apart from the individual debts of its members and from the debts of other partnerships of which any of its members are members. It may be adjudged a bankrupt, although the partners who compose it are not so adjudicated. Its members may be adjudged bankrupts, but where one or more, but not all, of them are not so adjudged, the partnership property may not be administered in bankruptcy without the consent of the partner or partners not adjudged bankrupt. Section 5h. A receiver or trustee of a partnership adjudged a bankrupt is not the receiver or trustee of the property of another unadjudicated partnership in which the members of the bankrupt partnership were also members, and he has no more right to seize or to administer such property than he has to take and distribute the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

property of any other stranger. In re Bertenshaw, 157 Fed. 363, 366, 367, 368, 85 C. C. A. 61, 64, 65, 66, 17 L. R. A. (N. S.) 886, 13 Ann. Cas. 986.

The stock of goods in controversy in this case was located in Kansas City, Mo. It was the property of a partnership, which, for the sake of brevity, will be called the Beeson firm. It was seized and sold by the United States District Court for the Western District of Missouri as the property of the partnership which, for brevity, will be called the Simon firm, and that court was about to remit its proceeds to the trustee in bankruptcy of the property of the latter firm appointed by the referee in bankruptcy of the United States District Court for the Western District of New York when the Fidelity Trust Company, the appellant, filed an intervening petition in which it alleged these to be the facts. About October 8, 1910, an involuntary petition in bankruptcy was filed in the United States District Court for the Western District of New York against Michael C. Simon, individually, and M. C. Simon, as surviving partner of the firm of Ely Meyer, who died in May, 1910, and M. C. Simon, and that court appointed receivers of the estates of Simon as such surviving partner and as an individual. On October 13, 1910, upon an affidavit of the attorney for the petitioning creditors that their petition had been filed in the New York court, that such receivers had been appointed by that court, that Simon as surviving partner and individually owned a stock of merchandise situated in Kansas City, and that it was for the best interest of the estate that a receiver should be appointed to carry on the mercantile business with this stock, the United States District Court for the Western District of Missouri appointed the appellee, Lon H. Gaskell, ancillary receiver of the estate of Simon as such surviving partner and as an individual, authorized him to conduct a mercantile business with the property of the alleged bankrupt, and required him to report to that court. Ely Meyer and M. C. Simon, prior to the death of Meyer, were copartners in the Simon firm which had its principal offices and was engaged in the clothing business at Rochester, N. Y., but Joe Beeson was not a member of that partnership. At the same time Meyer, Simon, and Joe Beeson were partners in the Beeson firm, which was conducting a clothing business in Kansas City, under the personal direction and management of Beeson, who was a resident of that city. The Beeson firm was a partnership separate from and independent of the Simon firm, and it owned the stock of goods at Kansas City which the receiver seized and sold. It had held out and represented to the appellant, the Fidelity Trust Company, that its stock of goods at Kansas City and its business were and would be separate from and independent of the assets and debts of the Simon firm, available to satisfy its obligations and exempt from the debts of the Simon firm. In reliance upon these facts and representations, the intervener loaned to the Beeson firm $15,000 in March, 1906, and took its promissory notes therefor. It now holds the notes of that firm for this identical indebtedness, and they have not been paid. The only property of the Beeson firm is the proceeds of the sale of this stock of goods which the receiver,

Gaskell, seized and sold as the property of the Simon firm, under the orders of the court below, and the intervener was deprived of its remedy at law by that seizure and the continuing possession of the property and its proceeds by the court below and its receiver. In view of these facts, the intervener, the Fidelity Trust Company, prayed that the court below would retain and distribute the proceeds of the sale of the property of its debtor to it and to the other creditors of the Beeson firm, and that it would refuse to deliver them over to the trustees of the property of the Simon firm until the debts of the Beeson firm had first been paid, and that it have such other and further relief as in equity and good conscience it was entitled to receive.

None of the averments of this petition were denied by answer or otherwise, so that, in the consideration and decision of the issues now presented to this court, all the allegations of this petition must be taken to be true. Instead of challenging the averments of this petition, the receiver pleaded to the jurisdiction of the court below, and his plea was that the United States District Court of the Western District of Missouri had no jurisdiction to determine whether or not the goods it had seized and sold and their proceeds were the property of the Simon firm, and hence of the alleged bankrupts, or the property of the Beeson firm, and hence not a part of the assets of the alleged bankrupts, and this because, as the receiver claimed, the original proceedings in bankruptcy against the Simon firm and against Simon were in the New York court, and, as he averred, that court alone had jurisdiction to determine whether the court in Missouri had seized and sold the property of that estate or the property of a stranger. This plea the court below sustained. It dismissed the petition of the intervener, and from its order the intervener appealed.

[1] At the threshold of the consideration of this case, we are met by the objection that this court is without jurisdiction to review the order assailed because the Supreme Court under the first clause of section 5 of Act March 3, 1891, c. 517, 26 Stat. pp. 826, 827, has exclusive jurisdiction to entertain a writ of error or appeal "in any case in which the jurisdiction of the court is in issue." But this clause has been limited by construction to cases in which the jurisdiction of the court as a federal court is in issue. The Supreme Court has held that the jurisdiction of a court as a federal court was not in issue where its jurisdiction in equity was questioned on the ground that the complainant had a remedy at law (Blythe v. Hinckley, 173 U. S. 501, 19 Sup. Ct. 497, 43 L. Ed. 783), where its jurisdiction in bankruptcy to require certain parties to pay money to a trustee was challenged (Schweer v. Brown, 195 U. S. 171, 25 Sup. Ct. 15, 49 L. Ed. 144), where its jurisdiction to adjudge that property claimed as exempt was the property of the estate of the bankrupt was in issue (Lucius v. Cawthon-Coleman Company, 196 U. S. 149, 25 Sup. Ct. 214, 49 L. Ed. 425), where its jurisdiction to adjudge that an alleged bankrupt was engaged chiefly in farming and its dismissal of a petition in bankruptcy upon that finding for want of jurisdiction was assailed (Denver First National Bank v. Klug, 186 U. S. 202, 22 Sup.

Ct. 899, 46 L. Ed. 1127), where the plea to the jurisdiction presented the question whether or not on account of the locality where goods were seized the court was the particular United States District Court which had jurisdiction to adjudge their forfeiture (United States v. Larkin, 208 U. S. 333, 339, 28 Sup. Ct. 417, 52 L. Ed. 517), where the question presented by an intervening petition was whether a state court or the United States Circuit Court had jurisdiction to administer the affairs of a corporation (Louisville Trust Company v. Knott, 191 U. S. 225, 235, 24 Sup. Ct. 119, 48 L. Ed. 159), and where on an intervention in foreclosure proceedings in the United States Circuit Court, the jurisdiction of that court was assailed on the ground that a state court had first acquired jurisdiction of the subject-matter of the intervention and had thereby excluded the jurisdiction of the federal court (Bache v. Hunt, 193 U. S. 523, 525, 24 Sup. Ct. 547, 48 L. Ed. 774). The cases cited illustrate, and the opinions in them establish, the rule that it is only when the jurisdiction of the trial court as a federal court is in question that its decision is reviewable in the Supreme Court under the first clause of section 5 of the act creating the Circuit Courts of Appeals. When the issue regarding the jurisdiction of the trial court is conditioned, not by its power as a court of the United States, but by its general authority as a judicial tribunal, or by the general principles of jurisprudence and the established rules of practice regarding the disposition of the claims of interveners and other parties to equity and ancillary proceedings, or by the principles and rules which govern the proceedings of courts of concurrent jurisdiction between themselves, its decision is reviewable in the Circuit Court of Appeals. The question of the jurisdiction of the court below in the case at bar was of the latter class. It was conditioned, not by the power of that court as a federal court, but by the general rules and principles governing the action of courts of concurrent jurisdiction in their relations to each other and by the principles of equity and rules of practice which control the disposition of the claims of interveners and other parties to original and ancillary suits in equity. It involved the simple question whether or not a court of equity which in ancillary proceedings in bankruptcy has seized and has in its control the property of a stranger to the original and the ancillary proceedings has jurisdiction to restore it to him or to his creditor who has been prevented by the act of the court from lawfully applying it to the payment of his claim. This court has ample jurisdiction to review the dismissal of the intervening petition challenged by the appeal.

[2, 3] The stock of goods was the property of the Beeson firm. The court below by its receiver seized it, converted it into money, and was about to send it to the court in New York as the property of the Simon firm. If the Beeson firm, or any person without a bona fide purchase from or legal process against that firm, had undertaken so to remove this property from the state of Missouri, the intervener would have had the legal right to attach and apply it to the payment of its claim. The legal custody of the property by the court below deprived it of that right and remedy and now that the facts appear

by its petition of intervention justice and equity demand that the court which, by mistake, deprived the Fidelity Company of the property it could otherwise have appropriated to the payment of its claim should use that power to restore it. In re John L. Nelson & Bros. Co. (D. C.) 149 Fed. 590, 594. The effect of the appointment of a receiver "is not to oust any party of his right to the possession of the property, but merely to retain it for the benefit of the party who may ultimately be entitled to it and when the party entitled to the estate has been ascertained the receiver will be deemed his· receiver." Wiswall v. Sampson, 14 How. 52, 64, 14 L. Ed. 322. The court itself holds ·and administers the property in the hands of its receiver, not for the benefit of the complainant or petitioner who moves it to appoint its receiver, nor for the benefit of the defendant, but for the benefit of those who establish their equitable right to it. Porter v. Sabin, 149 U. S. 473, 479, 13 Sup. Ct. 1008, 37 L. Ed. 815; Booth v. Clark, 17 How. 322, 330, 331, 15 L. Ed. 164. The utmost effect of the appointment of a receiver is "to put the property from that time into his custody as an officer of the court for the benefit of the party ultimately proved to be entitled, but not to change the title, or even 'the right of possession." Chicago Union Bank v. Kansas City Bank, 136 U. S. 223, 236, 10 Sup. Ct. 1013, 1017, 34 L. Ed. 341.

Why, then, should not the court below return the proceeds of this property to the creditor of its owner whom it has by mistake deprived of it? The answer is, because that court is exercising ancillary and not primary jurisdiction, and for that reason alone has no power to right its own wrong and deliver the property to the party entitled to it. If it had no jurisdiction of this property whatever because no original proceeding in bankruptcy and no plenary suit was brought in that court, then it had no jurisdiction whatever to seize or to sell it, and, if it had no such jurisdiction, it is its undoubted duty to restore the proceeds of it forthwith to the Beeson firm in Kansas City, from which it took it, or to the creditors of that firm who are equitably entitled to apply it to the payment of their claims. If, on the other hand, it had jurisdiction to seize it and to sell it, that jurisdiction imposed upon it the duty to· determine whether it was the property of the bankrupt or the property of the Beeson firm and to cause its receiver to deliver it to the party equitably entitled to it. It is true that prior to the year 1910 this court was of the opinion that the District Courts of the United States had no ancillary jurisdiction in bankruptcy proceedings, and that the court of original jurisdiction had the power to determine the title, the right to the possession and the existence of liens upon specific property claimed as a part ·of the bankrupt's estate situated in other districts, and the power to enforce its decisions in those districts. In re Granite City Bank, 137 Fed. 818, 70 C. C. A. 316; In re Dempster, 172 Fed. 353, 355, 356, 97 C. C. A. 51. But in January,. 1910, the 'Supreme Court decided in Babbitt v. Dutcher, 216 U. S. 102, 110, 114, 30 Sup. Ct. 372, 54 L. Ed. 402, 17 Ann. Cas. 969, and in Elkus, Petitioner, 216 U. S. 115, 117, 30 Sup. Ct. 377, 378 (54 L. Ed. 407), that "the re-

spective District Courts of the United States sitting in bankruptcy have ancillary jurisdiction to make orders and issue process in aid of proceedings pending and being administered in the District Court of another district," and the Congress in June of that year enacted that the District Courts "are hereby invested within their respective territorial limits as now established, or as they may be hereafter changed, with such jurisdiction at law and in equity as will enable them to exercise original jurisdiction in bankruptcy proceedings in vacation, in chambers, and during their respective terms as they are now or may be hereafter held to * * * (20) exercise ancillary jurisdiction over persons or property within their respective territorial limits, in aid of a receiver or trustee appointed in any bankruptcy proceedings pending in any other court of bankruptcy." Bankr. Act July 1, 1898, c. 541, § 2, 30 Stat. 545 (U. S. Comp. St. 1901, p. 3420), as amended by Act June 25, 1910, c. 412, § 2, 36 Stat. (Part 1) 839 (U. S. Comp. St. Supp. 1911, p. 1491).

Moreover, it seems to be settled by the decisions in Babbitt v. Dutcher, and other cases, that the limitation of section 2 of the Bankruptcy Act of the jurisdiction granted to the District Courts in bankruptcy to "their respective territorial limits" restricts the exercise of the power of a district court in which a petition in bankruptcy is filed to its own district, and that it may not enforce its process or its order for the delivery of property without the territorial limits of its district. Lathrop v. Drake, 91 U. S. 516, 517. 23 L. Ed. 414; Babbitt v. Dutcher, 216 U. S. 102, 110, 30 Sup. Ct. 372, 54 L. Ed. 402, 17 Ann. Cas. 969; Staunton v. Wooden, 179 Fed. 61, 64, 102 C. C. A. 355; In re Peiser (D. C.) 115 Fed. 199, 200; In re Sutter Bros. (D. C.) 131 Fed. 654; In re Benedict (D. C.) 140 Fed. 55; In re Robinson (D. C.) 179 Fed. 724.

It is therefore no longer true that one court, the court making the adjudication in bankruptcy, takes exclusive jurisdiction and alone collects and determines the titles to and liens upon the property wherever situated claimed as part of the estate of the bankrupt. It was undoubtedly because this was not true and because the court of primary jurisdiction in New York had no power to enforce its process or its order for the seizure or delivery of the property here in question situated in the state of Missouri that the ancillary jurisdiction of the court below was invoked. The earlier conclusion of this court, therefore, to the effect that the District Courts sitting in bankruptcy had no ancillary jurisdiction and the arguments in its opinions that were believed to sustain that view, are no longer authoritative. We turn to the consideration of the rights and remedies of parties under the decisions of the Supreme Court and the act of Congress, to which reference has been made.

A proceeding in bankruptcy is a proceeding in equity, and a district court sitting in bankruptcy, whether it is exercising its primary or its ancillary jurisdiction, is a court of equity. It is an established principle of equity jurisprudence that whenever a court of chancery takes into its legal custody, and thereby withdraws and withholds property from replevin, attachment, or other legal proceedings, it

hears and adjudges the claims to the title and to legal and equitable liens upon that property of all parties who intervene in the suit or proceeding before it in their own behalf and submit their claims to its adjudication. By this rule the power inhered in and the duty was imposed upon the court below to hear the petition of the intervener to decide whether the stock of goods seized and held was the property of the bankrupt's estate or of the Beeson firm and according to its decision to deliver its proceeds to the trustees of that estate or to the Beeson firm and its creditors.

It is true that the Supreme Court once said that the filing of a petition in bankruptcy "is a caveat to all the world and in effect an attachment and injunction" (Mueller v. Nugent, 184 U. S. 1, 14, 22 Sup. Ct. 269, 275, 46 L. Ed. 405), that the adjudication in bankruptcy puts the property of the bankrupt in custodia legis, and that its title vests in the trustee upon his appointment. But the later decisions of that court adjudge that the statement quoted applies only to parties who have no substantial claim of a lien upon or title to the property claimed as that of the bankrupt, and that against those who have such claims of existing titles or liens when the petition in bankruptcy is filed its filing is neither a caveat nor an attachment, that it creates no lien, and that they are strangers to the proceedings in the absence of an order or process making them parties, or some equivalent notice. Jaquith v. Rowley, 188 U. S. 620, 625, 23 Sup. Ct. 369, 47 L. Ed. 620; York Mfg. Co. v. Cassell, 201 U. S. 344, 352, 353, 26 Sup. Ct. 481, 50 L. Ed. 782; Hiscock v. Varick Bank of New York, 206 U. S. 28, 41, 27 Sup. Ct. 681, 51 L. Ed. 945; In re Rathman, 183 Fed. 913, 924, 106 C. C. A. 253. Again, it is the title of the bankrupt only that is placed in custodia legis by the adjudication and that vests in the trustee when appointed, and if the averments of the petition of the intervener are true, as we must assume in the consideration of this plea to the jurisdiction, the stock of goods taken by the court below never was the property of the bankrupts. The Beeson firm had a title to it which was created before and existing when the petition in bankruptcy was filed and the intervener's equitable right to it relates back to that title. The property was held by the Beeson firm under an adverse claim and title when the court below seized it and when the petition in bankruptcy was filed.

Attention is called to the fact that by the act of June 25, 1910, "ancillary jurisdiction over persons or property within their respective territorial limits" is granted to the District Courts "in aid of a receiver or trustee appointed in any bankruptcy proceedings pending in any other court of bankruptcy"; and it is contended that the true construction of this grant is that it makes the District Court the agent, the mere hand of the receiver or trustee appointed by the court of primary jurisdiction, bound to seize, convert into money, pay over to him, and send to that court the proceeds of any property in its territorial jurisdiction which he may point out as the property of the bankrupt, without judicial power or duty to inquire, or to decide, whether the property it takes and sends forth beyond its jurisdiction is that of the bankrupt or of a stranger, what legal or equitable liens

are held upon it by the citizens of its district, what the expenses of its officers are, or what their compensation shall be and without power to pay them out of the proceeds of the property it seizes and sells. If such had been the purpose of Congress, it would undoubtedly have conferred this power on the receiver or trustee of the court of primary jurisdiction directly. It was probably because the Congress was unwilling to intrust the power to such an officer and desired to invoke the judicial power and discretion of a court of equity to inquire and decide what property ought to be seized and sold and what proceeds ought to be sent to the court of primary jurisdiction as the property of the bankrupt's estate that it conferred this ancillary jurisdiction upon the District Courts within their respective territorial limits. Under it, these courts must appoint their own receivers, must guard them against wrongful action and consequent liability, and must direct the course they shall pursue. Conscience, good faith, and reasonable diligence alone move courts of equity to action. They may not be divested of their judicial functions and made mere catspaws to do the will of private parties or public officers, even by legislative action, much less by mere construction. Moreover, it would be unjust, unwise, and detrimental to the administration of justice to establish the rule that courts of ancillary jurisdiction under the bankruptcy law are without judicial power or duty to hear and decide whether the property they take is that of the bankrupt or of strangers, that they must seize and send to the court of original jurisdiction the proceeds of whatever property the receiver or trustee appointed by that court claims as the property of the bankrupt, and that adverse claimants of title to or liens upon it, and even its own officers, have no remedy for the enforcement of their claims but to follow the proceeds to other jurisdictions or to sue the receiver. Nor is this the natural or rational interpretation of the act of Congress or of the decisions of the Supreme Court. That act and those decisions are that the District Courts sitting in bankruptcy, and consequently in equity, have ancillary jurisdiction in bankruptcy proceedings pending in other districts. Ancillary jurisdiction is a term which has a plain and well-known meaning in the equity jurisprudence of the United States, a meaning fixed by settled practice and adjudged by the uniform current of the decisions of the courts of the United States. As neither the court nor the Congress modified or limited the term, the unavoidable presumption is that they used it, and intended to use it, in its recognized legal significance. In that significance ancillary jurisdiction includes the power to hear and adjudge, at the request of interveners, their claims to title to, or legal or equitable liens upon, the property it takes, or holds in its legal custody, by virtue of that jurisdiction and to send the proceeds to the court of original jurisdiction, or to apply it to the discharge of the claims of the interveners in accord with its decision. Sands v. E. S. Greeley & Co., 88 Fed. 130, 132, 31 C. C. A. 424; Street's Federal Equity Practice, 1560; Clyde v. Richmond & D. R. Co. (C. C.) 65 Fed. 336, 338, 340; McGraw v. Mott, 162 Fed. 1006, 87 C. C. A. 678; McGraw v. Mott, 179 Fed. 646, 654, 103 C. C. A. 204; Chattanooga Ter-

minal Ry. Co. v. Felton (C. C.) 69 Fed. 273, 283, 285; Central Trust Company v. East Tennessee, V. & G. Ry. Co. (C. C.) 69 Fed. 658, 663; Jones v. Central Trust Co., 73 Fed. 568, 19 C. C. A. 569. A court exercising ancillary jurisdiction acts independently of the court of primary jurisdiction, or of its officers and for itself. It appoints its own receiver, generally the same person appointed receiver by the court of primary jurisdiction, but in the seizure, management, sale, and distribution of the property seized within the territorial limits of its district, of which it takes the legal custody, this receiver is, and must be, governed by its orders exclusively. He may not justify any action by any orders of the court of primary jurisdiction. Kirker v. Owings, 98 Fed. 499, 511, 39 C. C. A. 132, 144; Reynolds v. Stockton, 140 U. S. 254, 272, 11 Sup. Ct. 773, 35 L. Ed. 464. The suggestion that such a court may not fix and pay the compensation and expenses of its receiver out of the proceeds of the property he seizes and converts into money under its direction, because the amendment of section 2 of the Bankruptcy Law by the act of June 25, 1910, provides that notice to creditors shall be given before the compensation of a receiver shall be fixed, loses its force when it is considered that by the same act notice to creditors of the sale of the property of a bankrupt's estate is also required to be given. 36 Stat. c. 412, §§ 9, 9½, p. 841. And, while this question is not here for adjudication in this case, we are unwilling by silence to intimate any assent to a rule that a court appointing a receiver in the exercise of its ancillary jurisdiction in bankruptcy has not plenary power to fix the compensation of its officer and to pay that compensation and his legitimate expenses out of any funds in its hands belonging to the estate of the bankrupt. In re Isaacson, 174 Fed. 406, 407, 98 C. C. A. 614, 615; Loeser v. Dallas (C. C. A.) 192 Fed. 909.

Therefore, after the ancillary jurisdiction of the court below had been invoked and it had appointed its receiver and empowered him to take the property of the bankrupts within its territorial jurisdiction, it had exclusive jurisdiction and the court of primary jurisdiction was without jurisdiction over that specific property. The power was conferred and the duty was imposed upon it to hear and adjudge all claims to the title to and to legal and equitable liens upon the property that its receiver took, which the claimants by intervention submitted to and requested it to determine, and it could not lawfully renounce that power nor avoid that duty. It had plenary jurisdiction to hear and decide the issue tendered by the petition of intervention. It was its duty to do so, and according to its decision to turn the proceeds of the property over to the trustees of the estate of the bankrupts, or to the Beeson firm and its creditors. Accordingly the decree below must be reversed, the case must be remanded to the District Court with instructions to permit the receiver to answer the petition of intervention, and to take further proceedings not inconsistent with the views expressed in this opinion.