In the Matter of Dooley, S. & Co.

# IN THE MATTER OF DOOLEY, SMITH, & COMPANY, Bankrupts.

San Juan, Bankruptcy, No. 101.

### BANKRUPTCY SALE OF PERSONAL PROPERTY IN PORTO RICO.

Bankruptcy—Equity Practice.

1. Bankruptcy proceedings are largely proceedings in equity. A bankruptcy court calls in the principle and sometimes the practice of a court of equity.

Bankruptcy—Ancillary Jurisdiction.

2. Under the bankruptcy law proceedings in aid of bankruptcy may be had by ancillary proceedings in a district different from that of adjudication. Ancillary jurisdiction is peculiarly necessary under the circumstances in the district of Porto Rico.

Bankruptcy—Ancillary Court.

3. While this jurisdiction is ancillary in its ultimate result, the proceedings in the ancillary court are practically exclusively for the purposes of administering the property within that district.

Referee—Orders of Court.

4. In an ancillary proceeding the court may appoint a special referee, or the court may give directions to the trustee as to sale and other questions. It is not necessary in a court of ancillary jurisdiction to appoint a referee *per se*.

Opinion filed October 19, 1914.

*Mr. Luis Banigan* for trustee.

HAMILTON, Judge, delivered the following opinion:

There was a petition filed on October 5th by the trustee for

In the Matter of Dooley, S. & Co.

permission to sell at public auction certain property of the bankrupt in Porto Rico. The matter was taken under advisement, mainly upon the point as to what is the proper procedure, this being an ancillary administration in bankruptcy, the primary court being in New York. It presents the peculiar situation that while the primary proceedings are in New York, the bulk of the assets is in Porto Rico, and it raises an interesting question as to which court should make the orders, or which court should make which orders in the administration. I have examined the matter with some care and have come to the following conclusion:

1. In the first place, a proceeding in bankruptcy is to a very large extent a proceeding in equity. A court cannot go outside the provisions of the bankruptcy law, but in enforcing those provisions it may, and very largely does, call in the principles and even the practice of a court of equity. This would seem to be a necessary inference from § 2 of the bankruptcy act and the commentaries, such as Collier and others, on that section.

2. In the second place, the question comes up as to what are the powers of an ancillary court in bankruptcy. Under the original act of 1898 little or nothing was said about any ancillary jurisdiction. Collier, Bankr. 9th ed. p. 465. The construction of the original act was that the court making the adjudication has absolute control of the administration of the property; and this brought up conflicting decisions in different parts of the United States. For instance, in New York, upon an application by a trustee appointed in Missouri, Judge Holt decided that he was without jurisdiction to make the orders requested by the trustee. He was following a previous decision that the primary court had exclusive jurisdiction. This went

to the Supreme Court of the United States, and is known as the case of Babbitt v. Dutcher, 216 U. S. 102, 54 L. ed. 402, 30 Sup. Ct. Rep. 372, 17 Ann. Cas. 969. There it was held that there was in bankruptcy under the original act such a thing as an ancillary jurisdiction. That is to say, that a court of one district could do whatever was necessary within that district to carry out the administration of the estate, although that estate had been adjudicated in an entirely different district. This would seem to settle the question that there is under the original act an ancillary jurisdiction in the district courts. The point was clinched, if it needed to be further settled, by an act of Congress passed June 25, 1910, just a few months later than the decision in the case of Babbitt v. Dutcher. 36 Stat. at L. p. 839, chap. 412, Comp. Stat. 1913, § 9586. This expressly confers ancillary jurisdiction upon the district courts of the United States, and in very full terms. So there would seem to be no doubt that there is ancillary jurisdiction in one district in aid of the plenary jurisdiction in another district. I might add that even without the act of June 25, 1910, it would seem that this court in Porto Rico ought to carry out the principles of Babbitt v. Dutcher to the fullest extent. Porto Rico is, of course, a judicial district of the United States. In that respect, legally perhaps, it stands on the same footing as other districts, but practically and geographically it is so different that this court has already in another ancillary suit announced that it will construe its ancillary jurisdiction in a very broad sense on account of the necessity of the case, the point being that where there is a right there must be a remedy. And unless overruled by some higher authority, this court is within its district going to do full justice between all parties. The court

does not wish to usurp any jurisdiction whatever, but it will construe jurisdiction that is conferred in such a sense as to enable it to do full justice in Porto Rico. However, so far as this particular case is concerned, the act of June 25th seems to set the matter at rest.

3. There is in the third place the further question. Suppose this court has the necessary jurisdiction, what is that necessary jurisdiction? How fully can it be exercised? The case of the Fidelity Trust Co. v. Gaskell, 115 C. C. A. 527, 195 Fed. 865, 874, states the principle that to all intents and purposes so far as regards rights in the ancillary district, Porto Rico in this case, as to all property within the ancillary district, the court of primary jurisdiction is practically ousted of its jurisdiction. That while it is called ancillary in the ancillary district, to the extent that its jurisdiction goes it is full and complete. And so the court in this case, for instance, can proceed in the fullest manner.

4. In the fourth place, as to how it shall proceed, that presents a more difficult question. Here is an application of a trustee for permission to sell at public auction certain property of the bankrupt in Porto Rico. Ordinarily in bankruptcy the person is adjudicated a bankrupt and then forthwith follows a reference to the referee, and the referee makes all orders of sale and everything with regard to the administration of the estate, subject only to review of the judge, and finally to the discharge of the bankrupt in the main court. But except in those instances the referee is really the court. In this particular case there is no general Porto Rican referee, and the question arises, Should this court appoint a referee or should it go ahead without a referee? What is its duty in the premises?

### In the Matter of Dooley, S. & Co.

It would be far pleasanter to the court—there is no question of that—to appoint a referee, and if any reason should arise in the administration of the trust calling for a special referee, the court is satisfied it has full power to appoint a special referee for the administration of property and rights in this district of Porto Rico; but at present the court does not think this is called for. Here is a petition for the sale of certain property. It is a question of fact whether the property should be sold or whether it should not be sold. The court thinks that it can, and probably should, go ahead itself in the consideration of that question. In fact, the law seems to say in § 22, that after an adjudication the court may refer the matter to a referee or to a special referee, or may keep the administration in its own hands. It is said there is no instance on record of a court keeping the administration in its own hands; that it always refers it to a referee; but it will be observed that when this is said, it refers to the court of primary jurisdiction. Collier, Bankr. 9th ed. p. 465. It is not necessary in a court of ancillary jurisdiction to appoint a referee *per se*. It may or may not become proper, and for the purposes of this special petition it does not seem necessary to the court to call in a referee. It would not hesitate to do so if the occasion arises. In fact, one was appointed for some other purposes.

In this particular matter the question arises whether there should or should not be a sale. The court has no evidence before it except the petition, and probably the best plan would be to set the petition down for some convenient day for such proof or proceedings as may seem proper, and, if convenient to counsel, I will set it down for Thursday of this week.