## In re ROUSE et al.

(District Court, N. D. Illinois, S. D. January 3, 1899.)

BANKRUPTCY—PRIORITY OF DEBTS—WAGES OF LABOR.

Although Bankruptcy Act 1898, § 64b, gives priority of payment out of bankrupt estates to wages due to workmen, clerks, and servants only when they have been "earned within three months before the date of the commencement of proceedings" in bankruptcy, yet, where an act of bankruptcy, which caused a suspension of the debtor's business, occurred on August 31, 1898, and a petition in involuntary bankruptcy was filed against it on the earliest day allowed by section 71 of the act, viz. November 1, 1898, priority will be accorded to wages of workmen earned within three months before August 31st, instead of limiting them to three months before November 1st; effect being thus given to the manifest general purpose of congress in regard to the preference of labor claims, as against the specific limitation in section 64b, which is contradictory of such general purpose.

In Bankruptcy. On petition of various workmen, laborers, and servants of the bankrupts for preferential payment of their claims.

W. T. Irwin, for claimants.
James M. Flower, for bankrupts.

GROSSCUP, District Judge (orally). On the 31st of August, 1898, the firm of Rouse, Hazard & Co., manufacturers of bicycles, suspended business; its property being on that date seized by the sheriff of Peoria county, Ill., under executions issued upon judgments rendered against the corporation in the courts of the state of Illinois. Subsequently the property was sold by the sheriff, and the proceeds held by him subject to further order. On the 1st of November, 1898, a petition was filed in this court by creditors, alleging the foregoing facts, and such other as in law constituted the firm of Rouse, Hazard & Co. involuntary bankrupts. Having determined that the sale made by the sheriff was as favorable as could be expected under further proceedings, and having taken, therefore, by the concurrence of all parties, the proceeds in the hands of the sheriff in lieu of the bankrupts' property, the only remaining question is whether certain claimants are entitled, in the distribution of these assets, to a preference.

The claimants are the workmen of Rouse, Hazard & Co., and their claims are for wages earned within three months before the 31st of August, 1898, not to exceed $300 to each claimant. The objection made to the allowance of priority is that the bankruptcy proceedings were not commenced until the 1st of November, 1898, and that, therefore, under the strict letter of the act,—section 64b (4),—no priority attaches for wages, except such as may have been earned within three months preceding such 1st of November.

The bankruptcy law went into effect July 1, 1898, but provided (section 71a) that no petition for involuntary bankruptcy should be filed until four months after, or the 1st of November, 1898. It is provided, however (section 3b), that any of the acts of bankruptcy set forth, occurring within four months before the filing of the petition, may be made the basis of proceedings in involuntary bankruptcy. Thus it happens that the failure of Rouse, Hazard & Co., occurring on the 31st of August,

brings their estate within the jurisdiction of the bankrupt court, although the creditors' petition was not filed, and could not have been filed, until the 1st of November following. If the claim for priority under consideration is to be limited to a period of three months prior to "the commencement of proceedings," it would only run back to August 1st, or a date only one month before the suspension of Rouse, Hazard, & Co. Is this the intention of the act? Such conclusion would, unquestionably, work a great hardship upon the workmen. Under the law, they could not so much as file a petition or take any step in the bankrupt court until the November following. Does this act of congress pretend to give priority in one section, and then prohibit in another section any step towards its realization? It is plain to me that congress, above all things else, intended that workmen should have a priority for their wages, to the extent of $300 in money and three months in time; but it is also pretty plain that, construing the language of the clause respecting the commencement of proceedings literally, and keeping in mind that under the law no petition could be filed until November 1st, these claimants can, under a strict construction, obtain no preference for the three months intended. The general purpose of congress, on one side, seems to be opposed by a strict interpretation, on the other. The bankruptcy law in this respect is, in my opinion, plainly self-contradictory. Under these circumstances, which of the contradicting provisions shall give way? Shall the manifest purpose of congress yield to one of the minor provisions of the act? Shall strict interpretation of language, though inadvertently used, and in the incidental connection only of fixing a limitation, emasculate the plain purpose of congress respecting this character of claims? I think it is plain that, where the general purpose is ascertainable, it should stand. Priority of the character here claimed has come to be almost universally allowed. It is a part of the established legislation of all, or nearly all, the states. It is founded upon a just regard for the exigencies of those who are compelled to earn their living by their daily labor. It is founded, too, on plain justice; for the product brought into court, and constituting the fund to be administered, is, to a considerable extent, the output of the men who have within three months devoted labor to it. I cannot conceive that congress intended, under any circumstances, or in any view of the language used in the act, to deny such priority or to scale it down. Had attention been called to the contradictory effect of the language used, I have no doubt that there would have been such substitution as would have left the priority unimpaired for the whole three months, and for the full $300. In such a case it is, in my opinion, the plain duty of the courts to carry out the main purpose of the act, although in so doing the otherwise literal meaning of some subsidiary and incidental provisions may be overridden. I therefore hold that the claimants are entitled to a priority, to the extent of the claims proven, not exceeding $300 each, for wages earned within three months preceding the suspension, or the 31st of August, 1898.