## In re CRAWFORD WOLLEN CO.

### Appeal of TERHUNE, NEARING & CO.

#### (District Court, N. D. West Virginia. January 8, 1915.)

1. BANKRUPTCY (§ 192*)—SELLING AGENTS—LIEN—"WORKMAN, LABORER OR OTHER PERSON PERFORMING LABOR."

    Petitioners, who were selling agents for the bankrupt woolen manufacturing company on commission, were not workmen, laborers, or other persons performing work or labor by contract, entitling them to a lien on the bankrupt's assets, under Code W. Va. 1913, c. 75, § 7 (sec. 3848), providing that every workman, laborer, or other person, who shall do or perform any work or labor by virtue of any contract for any incorporated company doing business in the state, shall have a lien on the real estate and personal property of the company, which shall have priority, etc.

    [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 294; Dec. Dig. § 192.*]

2. BANKRUPTCY (§ 192*)—LIENS—PRIORITY—SERVICES—EXTENT.

    Where servants of the bankrupt are entitled to a lien for services rendered under a state law, the right to preference is limited by Bankr. Act July 1, 1898, c. 541, § 64b, cl. 4, 30 Stat. 563 (Comp. St. 1913, § 9648), to a maximum of $300.

    [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 294; Dec. Dig. § 192.*]

3. BANKRUPTCY (§ 311*)—CLAIMS—PREFERENCES—FILING.

    Where it was doubtful whether claimants were entitled to a preference on their claim for services to the extent of $300, given by Bankr. Act 1898, § 64b, cl. 4, the referee properly permitted the filing of the claim to that amount as a preferred claim, and filing a claim for the balance as a general claim.

    [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 497–500; Dec. Dig. § 311.*]

In Bankruptcy. In the matter of bankruptcy proceedings of the Crawford Wollen Company. On petition of Terhune, Nearing & Co. to revise the referee's order determining that petitioners were not entitled to priority under a state statute for the amount of their claim, but permitting them to file their claim for a preference to the amount of $300 and as an unsecured claim for the balance. Affirmed.

Charles E. Williams, of Martinsburg, W. Va., for petitioners.

S. W. Walker, A. C. McIntire, and C. E. Martin, all of Martinsburg, W. Va., for contesting creditors.

DAYTON, District Judge. The bankrupt is a corporation, and was engaged in the manufacture of woolen fabrics at Martinsburg, this district. The petitioners compose a partnership doing business in Philadelphia, Pennsylvania. The corporation has been adjudged an involuntary bankrupt, and petitioners have sought to file a claim for $7,605.09 as a preferred one, under and by virtue of section 7, c. 75 (section 3848, Hogg's Code 1913) of the Code of West Virginia, which provides:

    "Every workman, laborer, or other person who shall do or perform any work or labor, by virtue of any contract for any incorporated company doing business in this State, shall have a lien for the value of such work, or labor upon all the real estate and personal property of said company, and such

lien shall have priority over any lien created by deed or otherwise on such real estate or personal property, subsequent to the time when the said labor was performed, but there shall be no priority of lien as between the parties claiming under the provisions of this section. Provided, that no lien shall be created under this section for labor performed more than nine months before such lien was recorded."

Section 8 (3849, Hogg's Code) provides that such lien shall be discharged unless the person desiring to avail himself thereof shall file with the clerk of the county court of the county in which the corporation has its principal office, works, or estate a sworn statement of the true amount due for such labor. It is admitted that petitioners' claim is based upon a contract for commissions due them as selling agents of the bankrupt of its manufactured products.

Under section 8 petitioners have undertaken to perfect a "lien" for their claim by filing the required account with the county clerk, after petition in bankruptcy had been filed. This claim for "lien" priority was vigorously contested by numerous other creditors before the referee, who decided that petitioners were not entitled to priority under this state statute for the amount of their debt, but under section 64b, cl. 4, of the Bankruptcy Act they were entitled to priority for $300, part thereof, and were entitled to file claim for the balance as an unsecured debt. To revise this ruling this petition has been presented.

[1] Of the objections urged by unsecured creditors against the claim for priority asserted by petitioners, I deem it necessary to consider two only that go to the very marrow of the bone of contention: First, were petitioners, as agents selling on commission the manufactured and finished product of the corporation, "workmen, laborers or other persons" performing "work or labor" by contract, within the true intent and meaning of this state statute, whereby under it they were entitled to assert such claim of "lien" priority? and, second, if so entitled, does section 64b, cl. 4, of the Bankruptcy Act supersede and limit such right to priority to the maximum allowance of $300 for work and wages performed within the period of 90 days prior to institution of bankruptcy proceedings, or, if not so entitled to priority under the state statute, are the provisions of section 64b, cl. 4, broad enough, independently, to authorize to petitioners priority for $300 part of their claim?

Similar statutes to this one of West Virginia have been enacted by many of the states. Inasmuch as its court of last resort has not so far construed the statute of this state to the extent of determining the answer to be given to the first question, we may well be guided by the decisions of other courts construing similar statutes. The Supreme Court of Appeals of this state has determined only three cases involving in any way this statute: Richardson v. Norfolk & W. Ry. Co., 37 W. Va. 641, 17 S. E. 195, Grant v. Cumberland Valley Cement Co., 58 W. Va. 162, 52 S. E. 36, and Griffith v. Blackwater Boom & Lumber Co. (first decision) 46 W. Va. 57, 33 S. E. 125 (second decision) 55 W. Va. 604, 48 S. E. 442, 69 L. R. A. 124. In the Richardson Case, it was held that a *subcontractor* was not within the terms of the statute because no direct contractual relation existed between him and the railroad company for whom the work was done. In the Grant

Case, the questions determined related solely to the sufficiency of the account and affidavit filed under section 8 to perpetuate the lien claimed and the methods of court procedure taken in the cause to enforce it. In the Griffith Case, Thompson had a contract with the corporation to cut and log its timber. The company became insolvent and went into the hands of a receiver. Thompson, among others, filed a claim for some $98,000 for damages in the nature of profits which he would have secured by the execution of his contract, if it had not been repudiated by the company and its receiver. This claim was decreed to him as an unsecured one, payable pro rata with others of that class. In the first decision the Supreme Court of Appeals held that, by reason of its becoming insolvent and passing into the hands of a receiver, all contracts of a corporation thereby in law became abrogated, and that damages for the loss of profits that would be derivable from execution of such contracts were not subject to recovery; that, however, the contractee was entitled to recover a just compensation for the actual expenditure of labor and money by him in fulfillment of his contract, subject to a deduction of all sums paid to him thereunder; and that for this compensatory sum he was entitled to a preference under this state statute. The whole basis of the controversy having been changed, the cause went back to enable Thompson to establish the amount that would be a just compensation for the actual money and labor expended. He did establish such compensation to be justly some $80,000, and it was decreed to him. A second appeal was taken, in which his right to preference was bitterly contested. The court sustained it, saying:

"As this question was adjudicated on the former appeal, the court below could not, nor can this court now, disturb that conclusion and determination. * * * That decision may be wrong, though we do not say it is; but it is and must remain the law of this case, however erroneous it may be."

And upon petition for rehearing it again answered this objection in the same way. The limit therefore, that the ruling in this case goes is that where a corporation has become insolvent, and been put in the hands of a receiver, and its contracts thereby abrogated, a contractee logger, entitled to compensation for work and labor done, comes within the terms of this statute and is entitled to preference. The difference between a logger performing the initial work of severing the timber, cutting it into required log lengths, and transporting these logs to the mill, there to be converted into the finished lumber product, and that of a sales agent, receiving the finished product from the mill and selling it, or negotiating its sale, to be delivered direct from the mill, for a fixed commission upon the quantity and value sold, is entirely obvious.

I was one of counsel for Thompson in this Griffith Case, and never have felt satisfied of the soundness of this ruling, either as to the doctrine of the legal abrogation of the contracts of insolvent corporations, or that Thompson, as a logging contractor, was entitled to a preference under this statute. On the contrary, I have always believed the original decree, ascertaining his damages because of the breach of the contract and decreeing such damages to be an unsecured claim

payable pro rata with all others of that class out of the assets of the company, to be the true solution of the controversy. In this conclusion, as regards the question of the law's abrogation of the contract, I am sustained by the conclusion of the author of a very exhaustive note to the case found in 69 L. R. A. 124.

It must be admitted, I think, that if the contention of the petitioners here is to be sustained, the terms of this statute must be construed to be broad enough to secure almost every one that may perform any service for a corporation, such as its officers, directors, attorneys, physicians, chemists, and civil engineers. In other words, the words used, "work and labor," must be construed to mean "service." Without extending discussion upon this proposition, it will be sufficient for me to say that I do not believe the statute capable of such broad construction, but, on the contrary, that its true intent and meaning is to secure only those engaged in the manual labor involved in the manufacture, mining, or construction of the product or work it is undertaking. In this view, while there is some conflict when it comes to drawing the line in particular instances and classifications, I conceive myself to be sustained by the great weight of authority derived from constructions of similar statutes in other states.

In Latta v. Lonsdale, 107 Fed. 585, 47 C. C. A. 1, 52 L. R. A. 479, an attorney employed on yearly salary was excluded. So was an insurance adjuster in Boston & A. R. Co. v. Mercantile Trust & Deposit Co., 82 Md. 535, 34 Atl. 778, 38 L. R. A. 97; a lumber inspector in In re Sayles, 92 Mich. 354, 52 N. W. 637; a store manager in Lawton v. Richardson, 118 Mich. 669, 77 N. W. 265; draftsmen in In re Stryker, 158 N. Y. 526, 53 N. E. 525, 70 Am. St. Rep. 489; bookkeepers in the same case, but per contra in Hanner v. Brewing Co., 8 Ohio S. & C. P. Dec. 399, and Consolidated Coal Co. v. Keystone Chemical Co., 54 N. J. Eq. 309, 35 Atl. 157; laundrymen in Steininger v. Butler, 17 Pa. Co. Ct. R. 97; a chemist in Cullum v. Iron Co., 5 Pa. Dist. R. 622; and an independent contractor in Vane v. Newcombe, 132 U. S. 220, 10 Sup. Ct. 60, 33 L. Ed. 310. And until the amendment of 1906, expressly naming them, traveling salesmen or agents selling on salary or on commission were held to be outside the privileges of section 64b, cl. 4, of the Bankruptcy Act. In re Mayer (D. C.) 101 Fed. 227; In re Scanlan (D. C.) 97 Fed. 26; In re Greenewald (D. C.) 99 Fed. 705.

Considerable confusion exists in the decisions of the courts of New York and Ohio, and it is held in In re Luxton & Black Co., 35 App. Div. 243, 54 N. Y. Supp. 778, that an agent selling pianos on commission was included in the act, and in Lewis v. Dawson, 6 Ohio Cir. Ct. R. 243, that a person selling the product of a manufacturing company partly on salary and partly on commission was entitled to its benefit. But, while this is true, such cases can clearly be distinguished from the one here, in one important particular at least, for in those cases a single individual was employed to sell such of the product as his effort would enable him to do, to the exclusion of other employment by others; here a firm composed of several individuals, located in a large city and engaged in the business of selling agents, undertakes by con-

tract to sell the output of the corporation solely for a commission. It does not appear how many different and independent contracts from other manufacturing companies this partnership, as selling agents, may have; but from what is disclosed it is a reasonable assumption that their sole employment is not confined to that with bankrupt.

Finally, the Circuit Court of Appeals for this Fourth Circuit in Tucker v. Bryan, decided February 4, 1913, but for some reason delayed in its publication in the Federal Reporter until December 31, 1914 (217 Fed. 576), construing the Virginia statute, has held "persons contracting to log and cut timber for a stated price per thousand feet for the lumber produced" are not entitled to a lien under the terms of the statute. Therefore, convinced as I am that these statutes were enacted for the protection of those engaged in some capacity involving physical and manual labor in connection with the manufactured product of a corporation like bankrupt, I hold these petitioners not entitled to a lien under this West Virginia statute.

[2] This conclusion obviates any necessity of answering the first proposition contained in the second question, to the effect that, if entitled to preference, does section 64b, cl. 4, of the Bankruptcy Act limit petitioners' right to preference to a maximum of $300. In order, however, that uniformity may exist in the decision of this question by referees in this district, I hold that it does so limit the right in all bankruptcy cases, regardless of state statutes to the contrary. To my mind the reasoning and conclusion of the Circuit Court of Appeals for the Seventh Circuit (In re Rouse, 91 Fed. 96, 33 C. C. A. 356) is decisive of the question.

[3] This brings us to the last proposition—whether section 64b, cl. 4, of the Bankruptcy Act independently is broad enough to authorize to petitioners a preference for $300, part of their claim. Grave doubt arises as to this. It certainly was not, as hereinbefore shown, prior to the amendment of 1906. The whole question must turn upon the construction to be given the words thereby inserted, "traveling or city salesmen." What is meant by "city salesmen"? Are we to construe them to refer to that class of men who canvass cities for wholesale dealers or manufacturers, for the purpose of selling their goods and wares to retail merchants, or to persons, like petitioners, located in the cities, undertaking as selling agents to sell the product of manufacturers and miners operating elsewhere, or are the words broad enough to include both? The referee manifestly thought the latter. No objection in this regard was taken by contesting creditors to his ruling. Besides, all these objections have arisen solely on the motion to file petitioners' claim, not upon evidence taken as to its validity or character. The objections made were in the nature of a demurrer to the proof of claim, and had, at the time made, to be determined alone upon the allegations of fact contained in these proofs. Even if in doubt as to whether or not petitioners were entitled to $300 preference, it was perfectly proper for the referee to allow the claim to be filed and contest be made, if desired by trustee or creditors afterwards as to its validity as a preference.

I am therefore of opinion that the ruling of the referee complained of is without error, and should be in all respects affirmed.