## In re EINSTEIN.

(District Court, N. D. New York. September 25, 1917.)

1. BANKRUPTCY ☞293(1)—COURTS—JURISDICTION.

    A court of bankruptcy, which had jurisdiction over a bankrupt's property, and in which ancillary proceedings were had, has jurisdiction to determine whether a fund collected by an ancillary receiver belongs to the estate of the bankrupt or another, and to make proper allowances to the receiver.

2. BANKRUPTCY ☞163—PROCEEDINGS—EFFECT.

    Where bankruptcy proceedings are instituted, a bill of sale of all of his property, executed by a bankrupt within four months of bankruptcy, may be set aside, though intended to protect creditors.

3. BANKRUPTCY ☞163—POSSESSION OF CREDITORS—CONSTRUCTION.

    Where a creditor of a bankrupt, who had previously attempted to extricate the bankrupt from his difficulties, accepted a bill of sale of the bankrupt's property, discharged a landlord's lien, which was a prior lien on the property, and attempted to care for the property for the benefit of creditors, the possession of such creditor cannot be treated as that of an assignee for the benefit of creditors; the prior agreement

between the parties providing for the continuance of the business and payment of creditors out of the net proceeds having been superseded.

4. BANKRUPTCY ⬤⟳210—COURTS—JURISDICTION.

Under Bankruptcy Act July 1, 1898, c. 541, § 2, 30 Stat. 545, as amended by Act June 25, 1910, c. 412, § 2, 36 Stat. 839 (Comp. St. 1916, § 9586), and declaring that courts of bankruptcy may exercise ancillary jurisdiction over persons and property within their respective territorial limits in aid of a receiver or trustee appointed in bankruptcy proceedings pending in another court of bankruptcy, a court of bankruptcy, within whose jurisdictional limits the bankrupt's property is found, has, in the exercise of its ancillary jurisdiction, power to establish and declare the existence of liens on the property, and direct payment therefrom, and claimants residing in such jurisdiction cannot be required to litigate their claims in the district wherein the bankruptcy proceedings were instituted.

5. BANKRUPTCY ⬤⟳116—LIENS—CLAIMS.

Claimant, a creditor of a bankrupt, who did business in Florida, paid rent due from the bankrupt, discharging the landlord's lien on the bankrupt's property. Thereafter the bankrupt's property was shipped to a foreign state for disposition. Claimant acted for the benefit of other creditors in protecting the property and attempting to dispose of it. *Held* that, while claimant was entitled, bankruptcy proceedings having intervened, and an ancillary receiver having been appointed in the state whence the property was taken, to have his claim for rent paid allowed, as the Florida landlord had a prior lien on the property, such claimant was not entitled to a lien on account of payment of transportation charges; it not appearing such transfer of the bankrupt's property was necessary.

In Bankruptcy. In the matter of the bankruptcy of Robert Einstein. George D. Chapman, ancillary receiver, having presented his account as receiver, prayed that it be settled and allowed, and his compensation and that of his attorneys fixed and allowed. Thereupon William T. McCaffrey, trustee, claimed that all funds in the possession of the ancillary receiver should be delivered to him, and that the claimants should resort to the court wherein the bankruptcy proceedings were had. Prayer of trustee overruled, and claims of receiver and others allowed.

George D. Chapman is the ancillary receiver of the estate in bankruptcy of Robert Einstein, the above-named bankrupt, in the Northern district of New York, and, having presented his account as such receiver, asks on due notice that same be settled, adjusted, and allowed, and his compensation and that of his attorneys fixed and allowed, and proper disposition made of the balance of the funds in his hands, which amount to the sum of $4,250. The petition in bankruptcy was filed in the United States District Court for the Southern District of Florida, and one Wm. T. McCaffrey of that district has been duly appointed and now is trustee of the bankrupt estate. The said trustee claims that all of such funds in the hands of said ancillary receiver should be paid over to him. He objects, not only to any allowances, but to the establishment of any liens on such funds by this court, and any order as to their disposition, claiming that this court, even though it has possession of the res, has no jurisdiction, and that the claimants must resort to the United States District Court in bankruptcy in the Southern District of Florida.

George D. Chapman is trustee in bankruptcy of the estate in bankruptcy of one Gurnsey B. Williams, whose estate is being administered in this court in the Northern district of New York, and as such he claims the entire funds and property, on the ground the goods from which same was derived belonged to said Gurnsey B. Williams, and not to said Robert Einstein. Gurnsey B. Williams, of Syracuse, N. Y., files a petition, claiming that Gurnsey B. Williams Company has a lien on such fund amounting to $1,306—for rent, $1,148,

paid to release a lien for such rent on the goods from the sale of which such fund was derived, and $148, transportation charges thereon—and asks payment of such sum therefrom. The facts will appear in the opinion.

Tracy, Chapman & Tracy, of Syracuse, N. Y., for receiver.

Benj. Stolz, of Syracuse, N. Y., for trustee Chapman.

Nash, Britcher & Eckel, of Syracuse, N. Y., for Gurnsey B. Williams Co.

Marks, Marks & Holt, of Jacksonville, Fla., for trustee McCaffrey.

RAY, District Judge (after stating the facts as above). [1] There is no doubt of the power and jurisdiction of this court to determine whether or not this fund belongs to the estate in bankruptcy of Robert Einstein or to the estate in bankruptcy of Gurnsey B. Williams, and to make proper allowances to the receiver George D. Chapman, who has had the custody and care of same, and who has been charged with the preservation of same. This court now has, and since the bankruptcy of both Einstein and Williams has had, the actual custody of this property. It is its duty to direct its officer, or receiver, to turn it over to the party entitled thereto, after making proper allowances, and this the court cannot do without first determining who "the party entitled thereto" is.

June 1, 1914, Robert Einstein, doing business as "Boston Store," rented of one Porter, as executor, etc., certain premises in Jacksonville, Fla., where he was doing business. November 2, 1914, said Einstein rented of "S. B. Hubbard and A. S. Hubbard, trustees," certain premises in Jacksonville, Fla. Einstein did business therein, and had this stock of goods above referred to in the rented stores. March 29, 1913, said Robert Einstein and said Gurnsey B. Williams, said Williams residing at Syracuse, N. Y., entered into an agreement in writing which, with other things, recited that Einstein was the owner and possessor of stocks of goods and merchandise in certain stores then occupied by him in Jacksonville, Fla., and Waycross, Ga., of the value of $26,000, and was owing certain indebtedness, which he was unable to liquidate, amounting to $16,787.33, and also recited that Einstein had secured an extension of six months for the payment of such indebtedness from certain creditors, and then proceeded:

"Now, in consideration of the sum of one dollar and of the performance of the mutual covenants herein contained by each of the parties hereto, and other valuable consideration, said party of the first part [Einstein] does hereby sell, assign, transfer, and set over unto said party of the second part [Williams] all his right, title, and interest in and to said three stores of merchandise" and "all accounts receivable"

—but upon the following terms and conditions: (1) The first party (Einstein) agreed to manage the business in each of the three stores "in the same manner as at present conducted" and to devote his entire time, etc., thereto. (2) The said first party agreed to keep and render daily reports of all sales in all of the stores and keep first party informed of all matters arising in respect to such business, and to pay all running expenses and take receipts therefor, and transmit them to second party, purchase only such new merchandise as necessary for the

proper conduct of the business and entirely subject to the approval and consent of the second party. (3) The net receipts were to be deposited in certain banks named to the credit of "Boston Department Store," and first party was to do other things not necessary to mention, except (4) "said party of the second part [Williams] hereby agrees to pay the indebtedness of said first party out of the net proceeds of sales deposited in said banks to the credit of said Boston Department Store, so far as said proceeds shall be sufficient to pay the same," etc. (5) Accounts were to be kept, etc., and then " (6) after said entire indebtedness has been paid in the manner herein provided it is mutually agreed by and between the parties hereto that this instrument shall then become null and void, and of no further effect, and said party of the second part will turn over to said party of the first part all books and papers belonging to the first party." No attempt was made to comply with the laws of Florida as to general assignments for the benefit of creditors.

November 13, 1916, and within four months of the filing of the petition in bankruptcy, for the recited consideration of $13,296.88, said Einstein, by bill of sale absolute, sold and transferred to "the Gurnsey B. Williams Company," of Syracuse, N. Y., all the goods, wares, and merchandise owned by him in said Jacksonville stores. The next day, November 14, 1916, Gurnsey B. Williams executed and delivered to said Hubbards, the lessors, the following:

"Whereas, there is a balance due A. S. & S. B. Hubbard, trustees, for rent of stores Nos. 429 and 431 West Bay street, Jacksonville, Florida, from Robert Einstein, of $1,148.00—eleven hundred forty-eight dollars—I, Gurnsey B. Williams, of Syracuse, N. Y., for value received, hereby agree with said Robert Einstein and A. S. & S. B. Hubbard, trustees, that I will pay the said rent of $1,148.00 to A. S. & S. B. Hubbard, trustees, on or before December 1, 1916.

"Dated November 14, 1916.　　　　　　　Gurnsey B. Williams. [L. S.]

"Executed, sealed and delivered in our presence:
　　"H. L. Moore.
　　"R. L. Runion."

Thereupon said Hubbards executed the following assignment:

"For and in consideration of the sum of eleven hundred and forty-eight ($1,148.00) dollars, the receipt whereof is hereby acknowledged, we, S. B. Hubbard and A. S. Hubbard, trustees, of Jacksonville, Florida, hereby sell, assign, transfer, and set over to the Gurnsey B. Williams Company, of Syracuse, New York, the annexed claim for rent of the stores 429–431 West Bay street, Jacksonville, Florida, being the rent for the months of July, August, September, and October, 1916, hereby transferring and assigning to the said Gurnsey B. Williams Company any and all liens which we have upon the stock of merchandise heretofore contained in said stores, pursuant to the terms of the lease executed between ourselves and one Robert Einstein, conducting business as the 'Boston Store,' hereby authorizing and empowering said Gurnsey B. Williams Company at their cost and expense, in our names or otherwise, to prosecute said lien in every manner as fully as we might do. It is hereby intended to transfer to said Gurnsey B. Williams Company all of our right, title, and interest in and to any lien which we have upon the stock of merchandise formerly contained in said stores.

"S. B. Hubbard, [L. S.]
"A. S. Hubbard, [L. S.]
Trustees.

"Attest:
　"Frank S. Gray.
　"C. L. Dean."

December 20, 1916, a little more than one month after this bill of sale and transaction as to the rent, a petition in involuntary bankruptcy was filed against said Einstein in the Southern district of Florida, who was doing business under the name "Boston Department Store." Einstein filed an answer, denying insolvency, but adjudication and the appointment of a trustee finally followed.   November 13, 1916, all the assets of said Einstein in said Jacksonville stores were removed from said stores and taken to Syracuse, N. Y., and, says the petition, "subject to the approval of the creditors of Einstein, for the purpose of turning same into cash and applying the proceeds to the payment of Einstein's creditors."   This transfer to Syracuse was made under the bill of sale mentioned.   Later an ancillary receiver was appointed in the Northern district of New York, and all the goods, etc., mentioned, which had been sent to Syracuse, came to the possession of such receiver, and were disposed of and converted into cash.   To obtain possession of such goods Gurnsey B. Williams Company paid the rent due the Hubbards as landlord, thereby releasing their rent lien thereon, which was transferred to the Gurnsey B. Williams Company.

On or about November 22, 1916, said Gurnsey B. Williams Company sent out a circular letter to the creditors of said Einstein, stating that the Gurnsey B. Williams Company was a creditor of said Einstein in the sum of $13,600, and that it was solicitous about the business of Einstein at Jacksonville, Fla., and—

"we felt that, to protect ourselves and the other creditors from practically a total loss, it was advisable for us to take possession of his entire stock under a bill of sale, secure the consent of this landlord, and remove the stock from the store and get it under the control of ourselves and the other creditors," etc.

Attention is also called to the lien on the goods for rent, and the letter then said:

"Had the owners of the stores taken possession of the stock and forced Mr. Einstein into bankruptcy, there would have been little or nothing for the creditors, including, of course, ourselves.   *   *   *   You will realize that our only purpose was to husband these assets for the benefit of all creditors," etc.

A consent for the disposition of the goods was inclosed, and the consents of nine creditors were obtained.

[2, 3] I do not think the goods were in the possession or under the control of an assignee for the benefit of creditors.   As against the proceedings in bankruptcy, commenced against Einstein December 20, 1916, the bill of sale, made for the purposes disclosed and executed November 13, 1916, could not prevail.   It seems clear that the prior agreement of March 29, 1913, had been abandoned and superseded by the later agreements and transactions.   At least the title was recognized as being in Einstein when such bill of sale was executed, November 13, 1916.

[4, 5] It is clear that, under the laws of the state of Florida, the landlords of Einstein had a valid lien on this merchandise for the rent paid, $1,148.   To obtain the goods it was necessary to pay this rent to the landlords, and it was paid in good faith to prevent a seizure and

sale by the landlords, and was paid, as we have seen, not for the purpose of securing an undue advantage over other creditors, or for the purpose of defeating the Bankruptcy Law, but for the purpose of conserving and protecting such assets for the benefit of all creditors. The letter, recited in part, clearly shows this. The Gurnsey B. Williams Company is in the Northern district of New York. The merchandise was brought here, seized by this court, and sold here, and this court has possession of the fund. It seems to me this reduces the question in issue to the proposition: Has this court the ancillary jurisdiction or power to establish and declare the existence of this lien, direct its payment from the proceeds of such sale and also the legitimate expenses of the receivership, and direct the payment of the balance to the trustee in Florida? Or must this court, having determined that the proceeds of such sale belong to the estate in bankruptcy of Robert Einstein, direct the payment of the fund to the trustee in Florida, and relegate the Gurnsey B. Williams Company and the receiver to the court of bankruptcy in Florida? The amendments of 1910 to the Bankruptcy Law confer ancillary jurisdiction on courts of bankruptcy where property of the bankrupt may be found. Fidelity Trust Co. v. Gaskell, 195 Fed. 865, 115 C. C. A. 527; Babbitt, Trustee, v. Dutcher, 216 U. S. 102, 30 Sup. Ct. 372, 54 L. Ed. 502; Elkus, Petitioner, 216 U. S. 115, 30 Sup. Ct. 377, 54 L. Ed. 407; 2 Remington on Bankruptcy (2d Ed.) §§ 1705, 1705¼, 1707; Acme Harvester Co. v. Beekman Co., 222 U. S. 300, 32 Sup. Ct. 96, 56 L. Ed. 208; U. S. St. 1909–1910, pt. 1, p. 838.

It seems clear that it would be unjust for a court in bankruptcy, having the actual possession of property, with different claimants thereto residing in its jurisdiction, to send the property to some other district, it might be thousands of miles distant, and relegate the parties to that court. See Fidelity Trust Co. v. Gaskell, 195 Fed. 865, 115 C. C. A. 527. I think one purpose of the amendment of 1910 was to obviate the necessity of doing this. It is not claimed, and I am not holding, that the court exercising ancillary jurisdiction and powers in aid of the main jurisdiction has the right or power to receive proof of general claims against the bankrupt estate and decree distribution; but having possession of a specific fund, the title to which is in question and the existence or nonexistence of liens thereon, held by parties residing in the jurisdiction of the court of ancillary jurisdiction, being in question, such last-mentioned court has the power, and it is its duty, to determine title and the existence or nonexistence of such liens thereon. The existence of such power is expressly asserted in Fidelity Trust Co. v. Gaskell, 195 Fed. 865, 871, 115 C. C. A. 527, supra, and this is sustained, I think, by the decisions in 216 U. S. 102, 30 Sup. Ct. 372, 54 L. Ed. 502, and 216 U. S. 115, 30 Sup. Ct. 377, 54 L. Ed. 407, and 222 U. S. 300, 32 Sup. Ct. 96, 56 L. Ed. 208, supra. In the Gaskell Case, supra, the Circuit Court of Appeals, Eighth Circuit, held:

"District Courts exercising ancillary jurisdictions in bankruptcy are vested with the power and charged with the duty to hear and adjudge the adverse claims * * * to the title to, or to legal or equitable liens upon, the specific property they seize as the property of the bankrupt, and, according to

their adjudications, to send the property, or its proceeds, to the court of primary jurisdiction, or to apply them to the satisfaction of such claims."

Remington, supra, adopts this rule.

There will be an order adjusting the accounts of the ancillary receiver, making allowances to him and to his attorneys, and establishing such lien for the rent paid at $1,148, and directing payment of such allowances and lien from the fund, and the transfer of the balance of the fund to the trustee in Florida.

The claims for transportation charges cannot be allowed as a lien on the property or its proceeds. This was no part of the lien on the property for which it was held by the landlords, or for which they had a right to hold it. I cannot hold that the removal from Florida to New York was necessary for the preservation of the property, or a necessary expense incident thereto.