## In re RODGERS & GARRETT TIMBER CO.

District Court, D. Maryland. November 3, 1927.

No. 294.

1. **Bankruptcy** ⟊350—State statute preferring labor creditors, without limitation as to maximum wage claim, is controlled by limitation in Bankruptcy Act (Acts Md. 1878, c. 108, §§ 50, 53; Bankruptcy Act, § 64b [5], [7]; 11 USCA § 104).

Acts Md. 1878, c. 108, §§ 50, 53, giving to labor claimants priority of payment against delinquent employer, which is without limitation as to maximum amount of wage claim, is controlled by $600 limitation in Bankruptcy Act, §§ 64b (5) and (7); 11 USCA § 104.

2. **Bankruptcy** ⟊345(1)—Bankruptcy Act (11 USCA) controls conflicting state laws.

As to priorities, Bankruptcy Act (11 USCA) controls state laws in cases of conflict.

3. **Bankruptcy** ⟊348(1)—Bankruptcy Act, giving priority to claims for wages earned within three months before commencement of proceeding, is given liberal construction (Bankruptcy Act, § 64b [5], [7], 11 USCA § 104).

Bankruptcy Act, § 64b (5), 11 USCA § 104, giving priority to claim for wages due employees earned within three months before date commencement of proceeding, is given liberal construction when read with subsection 7.

4. **Bankruptcy** ⟊348(5)—Priority may be given wage claims for wages earned within three months of time receivership proceedings in state court were commenced, which resulted in bankruptcy (Bankruptcy Act, § 64b [5]; 11 USCA § 104).

Bankruptcy Act, § 64b (5), 11 USCA § 104, giving priority to claims for wages earned

within three months before date of commencement of proceeding, *held* to apply to wages earned within three months of time when receivership proceedings in state court were commenced which ultimately resulted in bankruptcy.

**5. Bankruptcy ⊜⇒18½—Court appointing ancillary receivers in bankruptcy proceeding has exclusive control over them.**

Court appointing ancillary receivers in bankruptcy proceeding has exclusive control over them, so that they must account to such court rather than to court of original jurisdiction.

**6. Bankruptcy ⊜⇒18½—In bankruptcy proceeding, court of ancillary jurisdiction may determine priorities and liens in regard to property brought within its jurisdiction.**

In bankruptcy proceeding, court of ancillary jurisdiction has power to determine priorities and liens in regard to property brought within its jurisdiction and to pass such orders as may be necessary in connection with satisfaction of them.

In Bankruptcy. In the matter of the Rodgers & Garrett Timber Company, bankrupt. Petition by labor creditors claiming priority of payment out of a fund in the hands of ancillary receivers. Prayer of petition granted.

Ernest Ray Jones, of Oakland, Md., for ancillary receivers.

Julius C. Renninger and Gilmor S. Hamill, both of Oakland, Md., for petitioner.

COLEMAN, District Judge. A partnership composed of Frank W. Rodgers and L. Guy Garrett, trading under the name of the Rodgers & Garrett Timber Company, lumber dealers, was adjudicated an involuntary bankrupt in the District Court for the Western District of Pennsylvania on April 19, 1926. Previously—that is, on April 5, 1926—the circuit court for Garrett county, Maryland, had appointed three persons receivers of the partnership's assets in Maryland on petition of numerous labor creditors. Thereafter, a trustee in bankruptcy having been elected under the proceeding in the District Court in Pennsylvania, this trustee filed a petition here for appointment of an ancillary receiver, and on May 11, 1926, an order was signed by this court appointing these same three persons ancillary receivers.

Certain sales of the bankrupts' assets were duly completed and the ancillary receivers are ready to make their report. The petition now before this court was filed by the various labor creditors above referred to, claiming a right to priority of payment out of the fund in the hands of these receivers by virtue of chapter 108, §§ 50 and 53, of the Act of 1878,

of the laws of Maryland. These provisions are as follows:

Section 50: "If any individual engaged in mining or manufacturing in Garrett county, or any association or body corporate, engaged in any business whatever therein, shall for the space of thirty days be indebted to the person in their employ, or to furnishers of any raw material, in the aggregate sum of twenty-five dollars, and shall neglect or refuse to pay the same for the space of thirty days, the circuit court for said county, as a court of equity or the judge thereof in vacation, shall upon the petition of the employees or furnishers of raw material, or any number of them, appoint a receiver to take charge of the affairs of such individual, association or body corporate, with a view of their liquidation and settlement under the authority of said court."

Section 53: "The receiver shall take charge of the personal estate, goods, chattels, property and effects of every description whatever, other than real estate of such individual, association or corporation, and collect and make available the evidences of debt, and sell and dispose of upon such terms as the court shall direct, the goods and chattels, and pay off and discharge the debt owing from such individual, association or corporation to the persons in their employ, and the furnishers of raw material, or to each a pro rata proportion of his claims, and there shall be no priority or preference allowed in the payments of such claims, and no attachment, execution, mortgage, bond, deed, bill of sale, or deed of trust or other lien, except mechanics' liens, shall bind or operate as a lien upon said property or debts to the prejudice or disadvantage of the employee, or furnishers of raw material, as aforesaid, but the said claims, all and severally, shall be first fully paid and discharged, or as far as the same can be done, before any attachment, execution, mortgage, bond, deed, bill of sale, deed of trust, or other lien, except as hereinbefore specified, shall bind, hold, operate or take effect."

The petition presents two questions: First, are these claimants entitled to priority of payment under the foregoing Maryland law? And, second, should the ancillary receivers account for, and distribute, such funds as they have in their hands, including distribution to the claimants in this case, if so entitled; or should such funds be turned over to, and distributed by, the trustee in Pennsylvania, including distribution to the claimants in this case, if so entitled?

[1] Does the statute of Maryland, above set

forth, give the priority as claimed? No case has been cited to the court construing it, nor has any been found, but similar legislation in other states has been recognized and applied. Emerson v. Castor (C. C. A.) 236 F. 29; Kennison v. Kanzler (C. C. A.) 4 F.(2d) 315. Maryland has a general law with provisions somewhat akin to this local law. Code Md. art. 47, § 15; Lewis v. Fisher, 80 Md. 139, 30 A. 608, 26 L. R. A. 278, 45 Am. St. Rep. 327. It appears that the petitioner has done everything requisite to establish his right of priority under the state law, which priority, it is to be noted, is without limitation as to the maximum amount of the wage claim; nor is there any limitation as to the time within which the wages must have been earned.

We must, therefore, now turn to the Bankruptcy Act. Section 64b (5) gives priority to "wages due to workmen, clerks, traveling or city salesmen, or servants, which have been earned within three months before the date of the commencement of the proceeding, not to exceed $600 to each claimant." Prior to the amendment of 1926 (11 USCA § 104), the maximum allowance was $300. Section 64b (7) provides that "debts owing to any person who by the laws of the states or the United States is entitled to priority" shall also be preferred.

[2] The question, therefore, is whether relief under the Maryland statute is so controlled by the provisions of the Bankruptcy Act that priority of wages should only be recognized up to the amount of $600, and then only within three months before the date of the commencement of the proceedings. The general proposition is, of course, clear that the Bankruptcy Act controls state laws in cases of conflict, and it must be equally clear that, if a state statute gives a lien for wages or services, the extent of such lien is limited by the provisions of the Bankruptcy Act. Therefore the $600 limitation in the Bankruptcy Act must control. In re Western Condensed Milk Co. (C. C. A.) 261 F. 62; In re Crawford Wollen Co. (D. C.) 218 F. 951; In re Rouse (D. C.) 91 F. 514.

[3, 4] We have still to determine the question as to the exact meaning of the three months' limitation. As to this, the decisions have very properly applied a rule of reasonable construction, in the light of the language of sections 64b (5) and 64b (7), read together. The former says that only such wages shall have priority as "have been earned within three months before *the date of the commencement of the proceeding,*" and the latter gives priority to "debts owing to any person who by the laws of the states or

the United States is entitled to priority." Note that the three months' period does not expressly relate to the date of filing of the petition in bankruptcy, or the date of adjudication, but merely to "the date of the commencement of the proceeding."

What proceeding is referred to? A liberal, rather than a literal, construction has by the weight of authority been given to this language, with the result that, if the wages in question have been earned within three months of the time when receivership proceedings in the state court were commenced, which ultimately resulted in bankruptcy, as was true in the present case, priority has been allowed to such wage claims. This seems to be the correct interpretation to be applied. In re Rouse, supra; In re Crawford Wollen Co., supra; In re Laird, 109 F. 550. As said by Judge Day in the latter case (page 556):

"This is not a lien created by suit or proceedings at law or in equity. The lien is statutory, and is given perforce of the statute to those who have performed labor within three months of the receivership. * * * It is undoubtedly true that the bankrupt act has made provision for the payment of certain preferred claims, and that the provision of that act in administering an estate in bankruptcy supersedes the state law upon the same subject; but where the lien has attached before the fund has been turned over to the bankruptcy court, and is not one avoided by the act, it will be respected, although it may have arisen under a state statute."

[5] Turning to the second question, namely, should this court assume jurisdiction and order an accounting and distribution by the ancillary receivers, there would appear to be no doubt that a court appointing such receivers has exclusive control over them and that they must account to such court rather than to the court of original jurisdiction. Loeser v. Dallas (C. C. A.) 192 F. 909. There the court said (page 911):

"In the nature of things an ancillary receiver must be subject alone to, and obey the orders of, that court of which he is an officer. So obeying, it follows that to it alone must he account. Any other course would breed confusion in administration and go far toward making the exercise of ancillary jurisdiction impracticable; for if a court, in pursuance of comity, undertakes to exercise ancillary jurisdiction by administering local assets, which it alone has power and jurisdiction to administer, it follows that its hand must be free to administer by its own officer and to exact from him the full measure of duty. Such executive work it can only secure

from an officer answerable to it alone. Kirker v. Owings, 98 F. 511, 39 C. C. A. 132; Sands v. Neely (Greeley), 88 F. 133, 31 C. C. A. 424; In re Isaacson, 174 F. 406, 98 C. C. A. 614; Ames v. U. P. Ry. Co. (C. C.) 60 F. 966."

[6] Further, the weight of authority supports what seems to be the proper rule, namely, that a court of ancillary jurisdiction has power to determine priorities and liens in regard to property brought within its jurisdiction, and to pass such orders as may be necessary in connection with the satisfaction of same. Fidelity Trust Co. v. Gaskell (C. C. A.) 195 F. 865; Emerson v. Castor, supra; In re Einstein (D. C.) 245 F. 189; Story & Clark Piano Co. v. Holmes (C. C. A.) 251 F. 565; Murphy v. John Hofman Co., 211 U. S. 562, 29 S. Ct. 154, 53 L. Ed. 327. See also Kennison v. Kantzler, supra; In re Caswell Construction Co. (D. C.) 13 F.(2d) 667.

In the case of In re Patterson Lumber Co. (D. C.) 247 F. 578, this principle was doubted on the authority of Lazarus v. Prentice, 234 U. S. 263, 34 S. Ct. 851, 58 L. Ed. 1305. But a careful examination of the latter case discloses that the court there held that an ancillary jurisdiction could not decide whether a claim arising *subsequent* to bankruptcy ought to be allowed. So, also, in the Fourth Circuit, Judge Waddill, in Tidewater Plumbing Supply Co. v. Schimmel, 296 F. 459, held, following Lazarus v. Prentice, supra, that proceedings to recover funds expended by the bankrupt *after* bankruptcy ought not to be allowed in an ancillary jurisdiction. The court said (page 461):

"While there are many cases in which courts of ancillary jurisdiction should administer the fund under their control, settling and determining the liens thereon, and the rights of parties thereto, still, in a case like this, with the fund not actually in court, the same being confessedly a part of the bankrupt's estate, and diverted *after* the bankruptcy, it should be paid and transferred over, to be administered under decrees and orders of the court of original jurisdiction." (Italics inserted.)

The prayer of the petition will therefore be granted, and an order will be signed referring the case to the referee to state an account, and to make distribution in accordance with the foregoing, said account to include an allowance to the ancillary receivers of such additional commissions, and to their attorney of such compensation for his services, as the referee may find they are entitled to, pursuant to the provisions of the Bankruptcy Act and General Order No. 42.