## In re MILL IRON CONST. CO.

District Court, N. D. New York.
Feb. 9, 1932.

See, also, 48 F.(2d) 298.

Arnold & Smith, of Clearfield, Pa. (Randall J. Le Boeuf, of Albany, N. Y., of counsel), for D. E. Hibner.

Charles E. Hardies, of Amsterdam, N. Y., for respondent lienors.

COOPER, District Judge.

The trustee in bankruptcy, duly elected in the Western District of Pennsylvania, applies to this court to exercise its ancillary jurisdiction in aid of proceedings in the original jurisdiction in certain respects hereinafter stated.

The respondents, who are mechanics' lienors upon a fund, arising out of the performance of a bridge construction contract between the bankrupt and the state of New York and held by the comptroller of the state of New York, resist the exercise of the ancillary jurisdiction in the manner asked by the trustee in bankruptcy and ask for the exercise of that jurisdiction in their behalf.

The essential facts may be summarized as follows:

The bankrupt, a Pennsylvania corporation having its principal office in the city of Dubois in the Western District of Pennsylvania, made a contract with the state of New York on October 17, 1928, for the construction of a highway bridge near Ft. Hunter, Montgomery county, N. Y.

The bankrupt came into financial difficulties, by reason of which the contract was canceled by the state about August 28, 1929, and the state completed the contract some time in 1931, leaving a balance of the contract price amounting to $21,044.95, which would

be paid to the trustee of the bankrupt except for certain labor and material liens filed by the respondents against the contract moneys pursuant to the Lien Law of the state of New York.

On October 28, 1929, the bankrupt filed a voluntary petition in bankruptcy, was adjudicated the same day, and on December 6, 1929, the petitioner, D. E. Hibner, was duly elected trustee.

About 110 liens for the total sum of $15,-526.45 were filed between July 29, 1929, and November 12, 1929. While disputed, it is assumed that all were filed within the time fixed by the Lien Law of the state, and none were invalid for lack of compliance with the Lien Law at the time, viz. April 4, 1931, when an action for the foreclosure of such liens was begun in the Supreme Court of the state of New York, Montgomery county, in which action lienors were made parties plaintiff or defendant, and in which the trustee, D. E. Hibner, was also made a party defendant without leave of any court. It is contended by the trustee that certain persons who filed claims against this $21,000 are not parties to this action.

Negotiations were had between the trustee and the attorney for the plaintiffs in the foreclosure action, who also in effect represents many of the defendant lienors, looking to a payment of the amounts due the lienors out of other moneys of the bankrupt estate and the satisfaction and discharge of the liens against this money in the hands of the state comptroller.

Agreement was reached for the payment of the labor liens as preferred claims in bankruptcy, but like agreement could not be reached as to the material lienors, and the negotiations came to nought.

It is not clear whether because of these negotiations or not, but all the lienors except about six filed claims with the referee in bankruptcy, and in each of such filed claims the claimant stated that a notice of lien for said claim had been filed against the moneys due from the state of New York, and that such lien was not relinquished by the filing of said claim.

The time for filing claims with the referee has expired, and the lienors who have not filed claims are too late to do so, unless they come within the provisions of title 11 USCA, § 93 (n), Bankruptcy Act, § 57n, permitting such filing within sixty days after the termination of litigation involving the amount or validity of the claim.

The trustee seeks by petition to have this court exercise its ancillary jurisdiction in its behalf in these respects:

A. That all parties to the foreclosure action be enjoined from further prosecution of that action.

B. That all persons claiming liens on said moneys by reason of notices given the state of New York who are not parties to the foreclosure action be enjoined from enforcing their liens or claims in any manner except by filing their claims with the referee in the bankruptcy court.

C. That the public officials of the state, having control of this money, be enjoined from paying the same except to the trustee or such other persons who may be held entitled thereby by the bankruptcy court or this court in the exercise of its ancillary jurisdiction in bankruptcy.

D. That this court determine that the trustee is now vested with title and right to possession of said sum of $21,044.95.

Service of the trustee's application has been duly made on all the plaintiffs in the foreclosure suit.

The respondents, both in the same proceeding and by counter motion, ask that the court deny such relief as the trustee asks, and, on the contrary, make its order permitting nunc pro tunc the trustee to be made a party defendant to the foreclosure action and allowing such action to proceed to trial and judgment.

Taking up the respondent's application first, the question is, Has this court of ancillary jurisdiction the power to permit a foreclosure suit to be commenced in a state court after adjudication in bankruptcy for the determination of the respective rights of the lienors and of the trustee to the moneys held by the state and to permit the trustee to be made a party to such foreclosure.

■ That a mortgagee or other lienor may not bring suit in a state court after bankruptcy for the foreclosure of his mortgage or lien without the consent of the bankruptcy court is well established. Isaacs v. Hobbs, 282 U. S. 734, 51 S. Ct. 270, 75 L. Ed. 645; Straton v. New, 283 U. S. 318, 321, 51 S. Ct. 465, 75 L. Ed. 1060.

■ Where the property lies outside the limits of the district in which the bankruptcy court sits, ancillary proceedings may be instituted in the District Court of the United States for the district in which the property is, and an injunction against foreclosure

issued by the court of ancillary jurisdiction. Isaacs v. Hobbs, 282 U. S. 738, 51 S. Ct. 270, 75 L. Ed. 645, supra.

■ It thus becomes the duty of this court to restrain the prosecution of the foreclosure action in the state court, unless this court of ancillary jurisdiction has power to give its consent to such foreclosure. That the bankruptcy court of original jurisdiction has such power is clear. In re Schulte-United (D. C.) 50 F.(2d) 243, affirmed 49 F.(2d) 264 (C. C. A. 2).

But that is far from warranting the conclusion that any, and, therefore, every, court of ancillary jurisdiction also has power to do so as to property within its boundaries. To do so without the consent of the court of original jurisdiction might ofttimes greatly interfere with the orderly administration of the bankrupt's estate. The court of original jurisdiction knows whether such foreclosure would or would not interfere with the administration of the bankrupt's estate. The ancillary court ordinarily does not know. In re Patterson Lumber Co. (D. C.) 247 F. 578.

The reasonable, if not the necessary, inference from the cases above cited, is that such power resides only in the bankruptcy court of original jurisdiction. The Patterson Case, supra, expressly so holds. The prosecution of the state court foreclosure should therefore be restrained as the trustee asks, until the bankruptcy court in the Western District of Pennsylvania consents thereto.

■ The trustee asks also this court to decide that the trustee is now vested with title and right of possession to the said sum of $21,044.95.

It is clear that such request relates to the whole thereof, free from all liens and claims thereon, and without determination of their validity and amount in this or any court other than the bankruptcy court of the Western District of Pennsylvania.

The respondents contend that the question of the right of the trustee to the possession of this money cannot be determined in this summary proceeding, but that a plenary suit is necessary therefor. But this question need not be decided, for the trustee's application must be denied upon more substantial grounds than the form of the proceeding.

(1) No process or notice of this application has been given the state of New York or the comptroller of the state in whose possession such funds are.

(2) This court has no power to take possession of this money and deliver it to the bankruptcy court of Western Pennsylvania without a determination of the rights of the various claimants thereto in his court.

■ The first objection last above mentioned is easily curable, and therefore not important.

But the lack of power of the ancillary court to take possession of the property in its jurisdiction and transfer it to the court of original jurisdiction without determination of the rights of lienors and adverse claimants seems clear. And it would seem not to be affected by the fact that no ancillary receiver has been appointed and the property is not strictly in the custody of the ancillary court as distinguished from the original court.

In Butler v. Ellis, 45 F.(2d) 951 (C. C. A. 4) the court held that the liens of seamen, for services on vessels rendered in the territory of the ancillary court, must be determined before the bankrupt's property, then in the custody of an ancillary receiver, or its proceeds, could be transferred to the court of original jurisdiction. In that case, moreover, the maritime liens were perfected after bankruptcy.

That court said at page 953 of 45 F.(2d): "It is unthinkable that, in authorizing the district courts to exercise ancillary jurisdiction in aid of a receiver or trustee in bankruptcy appointed in another jurisdiction, it was intended that these courts should do no more than seize property designated by the officer of the foreign court and, without hearing those who adversely claim the property or an interest therein, turn it over to be administered in a jurisdiction hundreds of miles removed from the residence of the claimants." See, also, Fidelity Trust Co. v. Gaskell, 195 F. 865 (C. C. A. 8); Emerson v. Castor, 236 F. 29, 36 (C. C. A. 6); In re Einstein (D. C.) 245 F. 189; In re Meyer & Judd (D. C.) 1 F.(2d) 513, 516; In re Rodgers & Garrett Timber Co. (D. C.) 22 F.(2d) 571.

■ That statutory mechanic's liens for labor or material are not affected by the bankruptcy, even though filed after the filing of the petition, seems also clear. In re Caswell Construction Co. (D. C.) 13 F.(2d) 667, 671; New York-Brooklyn Fuel Corp. v. Fuller, 11 F.(2d) 802 (C. C. A. 2). It is also a necessary inference from Butler v. Ellis (C. C. A.) 45 F.(2d) 951, supra. It follows, therefore, that the court cannot seize and transfer or order the state comptroller to transfer this $21,044.95 without first ascer-

taining the amount and validity and providing for the payment of all valid liens thereon.

■ It is argued that this view is in conflict with Isaacs v. Hobbs, 282 U. S. 734, 51 S. Ct. 270, 271, 75 L. Ed. 645, supra, and that such authorities as are here cited are overruled by that case of recent date. In the Hobbs Case there was but one stipulated question before the court, viz.: "After the bankruptcy court has acquired jurisdiction of the estate of the bankrupt and the referee therein has entered an order requiring sale, by the trustee, of all of the property of the bankrupt but before the trustee has taken any steps to sell land (part of such estate) entirely located in another judicial district, can a suit to foreclose a valid mortgage thereon be commenced and an order of sale thereunder be made over the objection of the trustee, by the court of the latter district?"

There was no question before that court as to the power of a district court whose ancillary jurisdiction had been invoked by the trustee in bankruptcy to take property claimed by the trustee and deliver it to the bankrupt without regard to, and in defiance of, supposedly valid lienors and other claimants thereto. The other District Court in the Hobbs Case was not exercising ancillary jurisdiction in aid of the bankruptcy court. It was a court of equity, having exactly the same power and jurisdiction as the state court. The opinion thus declares: "Upon removal into the federal court upon the ground of diversity of citizenship, the latter court had no higher or different right to interfere with the bankruptcy administration than had the state court."

It is true that these words occur in the opinion on page 738 of 282 U. S., 51 S. Ct. 270, 272: "Thus, while valid liens existing at the time of the commencement of a bankruptcy proceeding are preserved, it is solely within the power of a court of bankruptcy to ascertain their validity and amount and to decree the method of their liquidation. In re City Bank of New Orleans, 3 How. 292, 11 L. Ed. 603; Houston v. City Bank of New Orleans, 6 How. 486, 12 L. Ed. 526; Ray v. Norseworthy, 23 Wall. 128, 23 L. Ed. 116; In re Wilka, supra [(D. C.) 131 F. 1004]."

Such words might seem to carry the implication that the validity and amount of liens and method of liquidation can be determined only in the bankruptcy court of original jurisdiction. But such was not the thought of the writer. The court was defining the supremacy of jurisdiction of the bankruptcy court as such over that of the state court which sought to interfere therewith by forthclosing a mortgage after bankruptcy.

It was in no wise distinguishing between bankruptcy courts of original and of ancillary jurisdiction. Were such intended, the words "of original jurisdiction" would have been used after the words "Court of Bankruptcy." All the statements in an opinion must be taken as applying to the questions before the court for decision.

That there was no thought of and no emphasis upon any distinction as to the exercise of the bankruptcy functions between the court of original and the court of ancillary jurisdiction is clear also (1) from the cases cited by the court on this point which decide merely the question of priority between the bankruptcy court and the state courts and (2) from the further language of the court in the only reference in the opinion to ancillary proceedings or ancillary jurisdiction, in which the court said: "Where the land lies outside the limits of the district in which the bankruptcy court sits, ancillary proceedings may be instituted in the District Court of the United States for the district in which the land is, and an injunction against foreclosure issued by the court of ancillary jurisdiction."

Another important distinction between the Hobbs Case and the case at bar is that in the Hobbs Case the mortgagee was affirmatively seeking to enforce his lien after bankruptcy in a state court in defiance of the trustee and the bankruptcy court, while here the trustee is himself the moving party, and he seeks to have this court of ancillary jurisdiction take the money from the state comptroller in the ancillary jurisdiction and deliver it to the trustee in the original jurisdiction in defiance of the rights of the lienors to a determination of their claims even in the ancillary jurisdiction and remitting the lienors to the bankruptcy court of original jurisdiction.

It should be clear, therefore, that the question here at issue was not before the court in the Hobbs Case, even inferentially, and nothing therein contained is in conflict with the views here expressed.

■ The contention of the trustee that the lienors waived their liens by filing the claims in the bankruptcy court seems not well founded, in view of the negotiations for payment in the bankruptcy court of some, at least, of the liens as preferred claims, and the fact

that in each claim filed with the referee the rights of the lienors as such were expressly reserved. Certainly there cannot be a waiver where the claimant expressly declares that he does not waive. He must be taken at his word, and his claim accepted or rejected on the basis on which he makes it.

Because of the holding of this court that the rights of the lienors must be determined in this jurisdiction, it is not necessary to consider whether or not any lienors who did not file claims in the bankruptcy court of Western Pennsylvania have lost their right to file their claims in that court. In this connection see Larson v. First State Bank of Vienna, S. D. (C. C. A.) 21 F.(2d) 936.

The application of the trustee to restrain the comptroller as requested is also granted.

Orders may be entered ·in accordance herewith.